### 6319.　GRAHAM *v.* THE STATE.

The circumstances in proof, taken in connection with the confession of the accused, were sufficient to authorize the inference that he stole the cow described in the indictment, and that the theft was committed in Irwin county, Georgia, and to exclude every other reasonable hypothesis than that of his guilt. Venue may be shown by circumstantial evidence as well as by direct proof.

DECIDED APRIL 20, 1915.

Indictment for larceny; from Irwin superior court—Judge George. January 5, 1915.

*Philip Newbern, H. J. Quincey, Haygood & Cutts,* for plaintiff in error.

*Joseph B. Wall, solicitor-general,* contra.

WADE, J. Edmund Graham was convicted of the larceny of a cow described in the indictment as "one blue and white speckled female cow about two and a half years old, with horns, unmarked, of the personal property of T. M. Paulk," etc. His motion for a new trial was based on the general grounds and on one special

ground, in which it is insisted that the evidence failed to establish that the offense was committed in the county of Irwin, and therefore the venue of the alleged crime was not shown. The prosecutor testified that on or about September 11, 1914, he lost the cow described in the indictment; that he last saw the cow in the morning of that day, in Irwin county, near Coochee creek, where the cow ranged; that about two weeks thereafter he discovered signs a quarter of a mile from where he had last seen the cow, indicating that a cow or some other animal had been butchered there; that two or three weeks after the cow was missed he saw a cow's hide that had been dug up in the garden of Isaiah Spicer, about half a mile from where he had last seen the cow; that it was "long enough" to be the hide of the lost cow, and was a "white speckled hide," and there "were indications that it was the color" of his cow, though the hide was partially decomposed, and the hair had begun to slip from it, and he could not swear that it was in fact the hide from his lost cow. He testified further that the place where he last saw the cow on September 11, 1914, the place where a cow appeared to have been butchered, and the place where the hide was discovered in Spicer's garden, were all within the limits of Irwin county. He testified that the defendant was shot by some one on Friday night about the 11th of September, though he did not hear of it until Sunday or Monday thereafter. Isaiah Spicer, testifying for the State, said that he knew the defendant and remembered the Friday night when the defendant was shot, as he himself did the shooting; that he saw the defendant pass by his house alone in the evening, riding a mule, with a gun on his shoulder, and going in the direction of Anderson Alexander's house; that during that night he heard a vehicle pass his place, going back in the direction of Coochee creek, and about fifteen minutes after it passed he went into his house and got his shotgun and went in the direction in which the vehicle appeared to be going, as he thought "they" had one of his hogs; that when he "got there" he heard a buggy coming towards him, and he stopped under an oak tree, and the persons with the buggy came directly towards and to the left side of the tree; that one Cook was leading the mule hitched to the buggy, and the defendant was walking along by the buggy with a gun, and there was beef in the buggy, cut up "like you bring it to market;" that when Cook and Edmund Graham, the

defendant, got within a few steps of where the witness was standing, the witness called out, "Hey, Edmund," and the defendant replied, "Who in the God damned hell is that?" and "pulled his gun and shot" at the witness twice, and then the witness shot back at him; that Graham and Cook ran, and the witness ran off also, and the mule pulled the buggy against a tree and broke loose and ran away. The witness further said that the shooting took place about half-past eight or nine o'clock at night, and that he did not see the defendant again that night, but saw him the next evening, when the defendant said that the beef in the buggy was his (the defendant's) beef, and that he supposed it was some one else who hailed him, and this was why he shot at the witness; that the defendant told the witness when he saw him the day after the shooting to go to his brother-in-law's house and tell his brother-in-law "to go down there and get the beef," as "he was hurt and could not manage, and his wife could not manage it," and he wanted his brother-in-law to take the beef up to the house of the witness and to Anderson's house and let them have some of it, and bring the remainder to him; that the defendant then told the witness that the hide "was smelling" and directed that the witness and the defendant's brother-in-law should bury it; that when Spicer and Cook (the brother-in-law) reached the place where the beef was, they found the defendant's hat and shoe, and they took the hide, and Cook buried it in Spicer's garden as the defendant had instructed; that the beef was spoiled and not in condition to sell, and the hide was smelling, as both had stayed in the woods all night; that the defendant claimed to the witness that the cow he had butchered was his and that he could prove this fact by his brother-in-law; that he, Spicer, told the sheriff where the hide was buried, and was there when the hide was dug up (about two weeks later), and it was then in bad shape, and most of the hair had slipped off; that you could tell that the cow had "black and white" on her, but not what sort of cow the hair came from.

T. M. Pollock, sworn for the State, testified, that on the day of the commitment trial he asked the defendant "who killed that cow down there where they found that hide buried," and he said "I killed it," and added that it was Mr. Tim Paulk's cow, and he (the defendant) knew it was Mr. Paulk's cow when he killed it. W. A. Tucker, sheriff of Irwin county, testified that the defendant

had talked to him several times about the cow alleged to have been stolen; that soon after the defendant was shot, he and others went to° see the defendant, but could get no information from him, but that later, after the hide was dug up and the defendant was arrested and brought to jail, he said to the defendant, "Edmund, we have got you," and the defendant replied, "Yes, you have got me," and, in answer to questions, stated that the cow he had butchered was "Mr. Tim Paulk's cow, a speckled heifer, about two and a half years old;" that he knew it was Mr. Paulk's cow, and that several other persons he named were to meet him there that night and help skin the beef; "that he killed it about two hours by sun, and went back to Aaron's and got the mule and buggy, and the other boys did not come; that he used a flash-light in butchering the beef; that somebody halted him that night and he shot them twice; that Isaiah was justified in shooting him because he shot first." The defendant in his statement admitted that he had confessed the stealing of the cow, to different persons including the solicitor (who did not testify), but claimed that the cow was not Paulk's cow but was his, and said that he had several witnesses who could prove where he got the cow, two of whom were "down there at that time, and there aint nobody seen them since I got shot." No witness was introduced in his behalf.

It appears from this testimony, which we have given almost in full, that there were ample circumstances from which the jury could infer the defendant's guilt to the exclusion of reasonable doubt. Obviously the beef in his buggy when he was detected by Spicer was stolen beef. His conduct in firing his gun at Spicer because Spicer hailed him can not be explained on any other theory. He must have been in a highly wrought-up state of mind, nervous and excited, and fearful of discovery; for not only did he shoot at Spicer without any sufficient cause, but when Spicer fired back and wounded him, the defendant, instead of announcing who he was or making any effort to prevent the firing of further shots towards him, or doing anything more to protect his mule and buggy and the beef in the buggy, turned and fled, and it does not appear that he made any effort to have the buggy and the considerable supply of fresh meat that he left in it cared for until the evening of the following day, when he saw Spicer and requested him to remove the beef and hide, and instructed him how to dispose thereof—possibly

fearing that his buggy would be recognized and that the decaying beef in it would attract attention and direct suspicion towards him. It will be noted that Spicer testified that the defendant especially instructed him to bury the hide, assigning as a reason that it was "smelling," and at the same time directed that the beef be divided among Spicer, his brother-in-law, and himself. Why the defendant should have directed that the hide be buried, assigning as a reason that it was "smelling," when he regarded the beef itself as fresh and suitable for food, is hard to understand, except on the theory that beef could not be identified and that the hide unburied might serve to criminate him.

The defendant's confession appears to have sufficiently shown that he killed a cow belonging to Tim Paulk, a speckled heifer about two and a half years old. The indictment charged him with stealing a blue and white speckled female cow, about two and a half years old, which had horns, was unmarked, and belonged to T. M. Paulk. So it appears that his confession of itself did not absolutely identify the cow, which he admitted stealing as being the particular cow belonging to Paulk which was described in the indictment; but, according to the testimony, Paulk had only lost one cow, the cow described in the indictment, and the defendant several times admitted that he knew that the cow he had stolen belonged to Paulk; so from this it would appear that the cow he admitted stealing and the cow described in the indictment must have been the same. Again, the hide dug up in Spicer's garden two or three weeks after the loss of the cow, though somewhat decayed, was described by the prosecutor as a "white speckled hide," with "indications" that its color was the same as that of the lost cow; and Spicer asserted that while he could not tell the sort of cow the hide came from, he was able to determine that the cow "had black and white on her." While the indictment described the cow as "one blue and white speckled" cow, this description would include equally well a cow which was black and white speckled, since it is a matter of common knowledge that, literally speaking, no cow on this mundane sphere is actually "blue," though cows of that color may possibly browse through the valleys of the moon, graze along the banks of the canals that seam the face of the planet Mars, or disport themselves in the realms of fairyland. According to the vernacular of the woods and fields, of "Crackerdom" at least,

"blue," as applied to a cow or other animal, generally denotes either a modified shade of black, or black with white intermingled, or dark gray, dove, or slate color, which, in contrast with some decided color or with white, suggests and somewhat resembles blue; and this court, "to the manner born," can not affect ignorance of the general meaning of the adjective "blue" when used in such a connection, but must hold that a "blue and white" speckled cow and a "black and white" speckled cow may be one and the same, and a jury would be authorized so to find. When the hide was found, after having been buried two weeks, it appeared to be black and white speckled; and, considering the changes which may have resulted from the partial decay of the hide itself (to which the black and white, or blue and white, speckled hair was attached), or from the fact that it had been buried in earth which may have soiled and partially discolored the hair, the jury were authorized to infer that the "black and white speckled" hide had been taken from the "blue and white speckled" cow described in the indictment, especially in view of the fact that the defendant admitted stealing a cow belonging to Paulk, and Paulk had lost but one cow, and that cow one which had a blue and white, or in other words a modified black and white, speckled hide. Without discussing all of the evidence in detail, it seems plain that there was ample proof to identify the cow butchered by the defendant, as the cow stolen from the prosecutor, and there was no material variance between the allegations and the proof.

It is insisted by the plaintiff in error that there was not sufficient proof of the venue. It is well settled that "venue may be proved by circumstantial evidence as well as by direct proof, if the circumstances proved equally satisfy the mind." *Dyer* v. *State*, 6 *Ga. App.* 390 (65 S. E. 42). In *Cook* v. *State*, 9 *Ga. App.* 208 (70 S. E. 1019), it was said that proof that certain stolen hogs were on a range in Miller county shortly prior to their asportation was sufficient evidence, when taken in connection with the fact that the hogs were found in the possession of the defendant, to authorize the inference that the taking was in Miller county. In this case it appears that the cow ranged in Irwin county, and was seen for the last time in that county and only a short distance from where the accused was later discovered in the possession of a hide which practically corresponded with the description of the hide of the stolen

cow, and also in possession of a quantity of fresh beef. It further appears that the place where this cow or some other animal had been butchered was discovered at a point within the county of Irwin a short time after the loss of the cow described in the indictment, and that the hide found in the possession of the defendant was found only a short distance away from where the cow was last seen, and also a short distance from where some animal appeared to have been butchered, and the place where the hide was buried was likewise near where the cow was last seen, and all these points or places were in Irwin county.

Under the ruling in the *Cook* case, supra, and taking not only the circumstances mentioned immediately above, but the entire evidence, with the confession of the accused, it is clear that the evidence was sufficient to exclude any hypothesis other than that the cow was stolen and butchered in the county of Irwin.

*Judgment affirmed.*

RUSSELL, C. J., concurring specially. Under the authorities cited and others that could be mentioned, I think the evidence was sufficient to establish the venue. I think, too, the fact adverted to by my brother Wade, that Paulk had lost only one cow, coupled with the confession of the defendant that the cow he killed was Paulk's, established larceny as alleged. In the conclusion reached by the court, therefore, I concur, though I am unable to express any opinion as to the extramundane localities referred to, and furthermore I am unwilling to state that it rests within my judicial knowledge that there are not cows that can be properly denominated as "blue" cows. I do not commit myself to the proposition that a blue cow can be called a black cow, or vice versa, or that the only fundamental basis upon which the designation of blueness depends is the commingling of black and white hairs. With this cautionary proviso, I fully agree with the decision of the court.