## 23373. MANOR v. THE STATE.

ARGUED FEBRUARY 15, 1966—DECIDED MARCH 14, 1966.

*Kravitch, Garfunkel & Hendrix, Aaron Kravitch, E. H. Gadsden, John W. Hendrix,* for appellant.

*Andrew J. Ryan, Jr., Solicitor General, Andrew J. Ryan, III, Arthur K. Bolton, Attorney General, Rubye G. Jackson, Assistant Attorney General,* for appellee.

MOBLEY, Justice. Robert Manor was indicted, tried, and convicted of murder without recommendation and sentenced to death by the Superior Court of Chatham County. From the verdict and judgment he filed his motion for new trial containing the general grounds which was later amended to include twenty-eight special grounds. The defendant was indicted, tried, and convicted and filed his motion for new trial all before the effective date of the Appellate Practice Act (Ga. L. 1965, pp. 18-40, 240-244) of August 1, 1965. His amended motion for new trial was filed December 9, 1965. His notice of appeal and enumeration of errors were timely filed, and he enumerated as error each of the grounds of his motion for new trial as amended.

■ In our view of this case it will be necessary only to consider those alleged errors as to failure to give defendant a preliminary or commitment hearing, as we think there was no valid waiver of the hearing, and it was error not to give him a commitment hearing requiring the grant of a new trial. Such

of the facts and circumstances and the events prior to the purported waiver of the preliminary hearing by the defendant as are necessary to demonstrate the error will be recounted.

The victim, a spinster nurse, was last seen on Wednesday, September 16, 1964, when she entered her home where she lived alone. She was found the next day lying in a bathtub half filled with water. She was dead, and, according to an autopsy, died of suffocation and drowning; and there was evidence of sexual molestation. Based on facts developed by police officers, a warrant was sworn out for the defendant on the following Sunday; and he was placed under arrest and taken to the police barracks, where the officers interrogated him. After being confronted with the facts the officers had developed, he admitted that he had knocked out a window of the victim's house and entered the house for the purpose of taking things therefrom; that the victim came home while he was in the house and upon seeing him became frightened, and that he choked her to keep her quiet; that when he released her she was limp, so he placed her in the tub and half filled it with water to make it appear that she had drowned. He at first denied taking her clothes and billfold, but after the billfold was found in a catch basin of the sewerage system he admitted taking it and the clothes and having thrown them away. The officers testified that these statements were freely and voluntarily made, after he had been warned that he did not have to say anything, and was entitled to counsel, but he "told us that he didn't need a lawyer; that he could tell us without the lawyer."

Detective Whitten testified that some time Sunday, after the defendant had made his statement to them, the defendant asked him to call attorney Joe Saseen for him, that he did so, and Mr. Saseen was out, but about 9 p.m. he called and said he could not take the case; that on Monday morning he told the defendant that Saseen would not take the case, so he then asked him to call Mr. Eddie Goodwin, an attorney, which he did, and Mr. Goodwin went to see him on Monday. Mr. Goodwin found the defendant naked in his cell and went up and told the officers he would not talk to him in that condition. The officers refused to restore his clothing and Goodwin refused to take his

case. Captain Webber, a superior of Whitten's, testified that he ordered that defendant be stripped of his clothing as he appeared very remorseful and he was afraid he might attempt to take his life; that on order of the Chief of Police he returned his clothes to him. Detective Whitten testified that his clothes were taken Sunday afternoon or night and had been returned to him Tuesday morning when he saw him.

Sergeant Taylor, one of the investigating officers, testified in answer to the question, whether he was the officer who told him he would get off better if he didn't insist on a preliminary hearing that "I only told him that—I says, You can wait in the police barracks here until someone is appointed as your attorney, but I understand the attorneys you wanted have refused to take the case; or you can go to court and waive a hearing and go on over to the county jail." And he said, "I will go on to the police court and waive the hearing." He then went before Judge Brennan, the Judge of the Police Court of Savannah, who bound the defendant over to the superior court, and who testified that defendant was not represented by counsel when he came before him; that the notation on his docket showed what the findings of the court were, which notation was "Superior Court, Grand Jury; wants an attorney; waives preliminary hearing." Judge Brennan said he explained to him that Judge Harrison of the Superior Court would be glad to appoint him an attorney and advised him that he should make no decision without the advice of an attorney, and he said "he wanted to go to the higher court; waived preliminary hearing."

Assuming that detectives Whitten and Taylor and the other investigating officers and Judge Brennan acted in the utmost good faith in handling the defendant, it is clear nevertheless, that defendant who was charged with a horrible murder, a capital felony, for which he could be sentenced to death, without the advice of counsel and under compelling circumstances made a crucial decision to waive and did purport to waive a preliminary or commitment hearing before the police court. A commitment hearing is a valuable right which the law gives to one accused of crime. Ga. L. 1956, p. 796 (*Code Ann.* § 27-210); *Code* § 27-401 et seq. A lawyer recognizes this fact, for this

affords him an opportunity to make the State show its hand by putting up the evidence it has against the accused, which enables him to know what he has to defend against, as well as to protect his client against commitment without sufficient evidence. *Savannah News-Press, Inc. v. Harley,* 100 Ga. App. 387, 391 (111 SE2d 259). The law gives the defendant a reasonable time for preparation of his case, and in no event shall he be forced to trial without aid of counsel, if there be reasonable probability of his securing counsel without too great delay. *Code* § 27-403.

On Sunday, the day of his arrest, he tried to get attorney Joe Saseen and failed. On Monday attorney Goodwin, at his request, came to see him, but refused to talk with him in a naked condition and left when the jailer would not give him a pair of pants to put on. Then he is told by Detective Taylor that "you can wait here in the police barracks until someone is appointed your attorney, but I understand the attorneys you want have refused your case, or you can go to court and waive a hearing and go on over to the county jail." And he replied "I will go on to police court and waive hearing," which he did on Thursday.

A person accused of crime may waive a commitment hearing, but a waiver of commitment hearing under such conditions as existed in this case is no waiver, and the purported waiver is a nullity, for the conclusion is inescapable that to get out of the city barracks where he was being held in a cruel and inhumane manner in a naked condition in a steel cell, with a rock floor, a metal bed with no mattress, and to escape this humiliating and intolerable treatment, he agreed with Detective Taylor to waive the hearing and go over to the county jail where he could get counsel appointed. The circumstances under which he waived commitment hearing amounted to duress, such as destroyed the exercise of his own free will and accord in making his decision, and this cannot be recognized as a valid waiver of the hearing.

The defendant was represented by able counsel appointed by the judge of the superior court in all proceedings in that court, and the record makes it crystal clear that the able trial judge

870

made every effort possible to give the defendant a fair and impartial trial; but this did not erase the error and the harm done to the defendant prior to the time he reached the superior court.

■ All the proceedings in this case beginning with the commitment hearing and including indictment, trial, verdict and sentence of the court are nugatory and are hereby declared null and void. The court is directed to quash the indictment, set aside the verdict and judgment; and the defendant must be furnished with counsel, if he is without counsel, and must be given a commitment hearing, if he desires such, and the case may then proceed through the processes of law of bringing him to trial by indictment of a grand jury.

*Judgment reversed with direction. All the Justices concur.*