24974.   JACKSON v. THE STATE.

ARGUED DECEMBER 10, 1968—DECIDED JANUARY 9, 1969—
REHEARING DENIED JANUARY 23, 1969.

*William W. Daniel,* for appellant.

*Lewis R. Slaton, Solicitor General, John W. Stokes, Tony H. Hight, Arthur K. Bolton, Attorney General, Marion O. Gordon, Mathew Robins, Assistant Attorneys General,* for appellee.

GRICE, Justice.   Convicted of rape and sentenced to life imprisonment, Robert Louis Jackson appeals to this court.   He and six others were indicted jointly by the grand jury of Fulton

County but he was tried separately in the superior court of that county. There are 34 enumerations of error, complaining of the striking of his plea in abatement, motion to quash the indictment and motion for another commitment hearing; the denial of his motions for mistrial; the admission of certain testimony; the failure to exclude certain testimony; the refusal to allow certain testimony; and the refusal to give certain requests to charge to the jury.

The evidence relating to the commission of the crime, except as to the appellant's participation, is not in dispute. That which is necessary to a determination of the appeal may be summarized as follows.

The victim was a young Korean who was formerly married to an American serviceman. She and her children lived in an apartment in Atlanta.

On September 22, 1967, sometime after 9:30 p.m. she was behind the steering wheel of her automobile which was parked under a street light in Grant Park in the City of Atlanta. Also occupying the front seat was W. H. Pressley who with his family lived next door to her. Suddenly and without warning four young Negro men came to the automobile. One rapped on the glass window nearest her and pointed a pistol at her. They gained entry to the car, robbed her and her companion of several articles and forced them out of the car. These men were four of the co-indictees, and insofar as the evidence shows the appellant was not one of them.

The victim was taken to a place near a pavilion in the park by two of the four men. The companion was forced by the others to lie nearby upon the ground, under threat of a pistol. During this time she was held by one of the men while each of the others took turns raping her, despite her protestations, screams and cries.

At approximately midnight the four at gun point forced the victim and her companion to get in her car and crouch on the floor while they drove to an old abandoned house at 967 Pulliam Street in Atlanta. There, she was stripped of her clothing, made to lie upon a dirty mattress, and repeatedly raped by the four who had carried her there and also by a large number of young

Negro men who joined them there. A pistol was pointed at her head and her hands and legs were held by the men. The room was dark except for a street light which shined through a window and occasional matches struck by her attackers so they could look at her. With this illumination she was able to identify the appellant as among those who raped her there. During this entire period her companion was forced to lie close by upon the floor and was kept there by force and threats.

After a long time the men left and the house became quiet. Thereupon the victim put on some of her clothing and she and her companion attempted to flee by the front door. However, they were immediately accosted by three or four Negro men who, forcibly and by threats with a large knife, took them back into the house. There the ordeal was repeated. When these attackers were gone and the house became quiet she and her companion again attempted to flee, and this time reached a nearby service station. There, the attendant, immediately upon their arrival at approximately 4:30 a.m., telephoned for the police.

When officers arrived the victim made immediate outcry that she had been raped, thirty, forty or fifty times. She was then taken to a hospital where examination by a physician showed ample evidence of penetration.

Her car was found abandoned at a specified street location in the city about 10 a.m. On the outside of the left door a fingerprint, later identified as that of the appellant, was found. The keys to her car were taken from the appellant's brother, one of the co-indictees, and several articles belonging to her companion were recovered from him and other co-indictees, later identified as the four who were in Grant Park.

Upon the trial, the appellant made an unsworn statement. He said that he was not present during any of these events, had no connection whatever with them, and was with his mother all the time. For support of this he relied upon her testimony.

■ In his appeal he first enumerates as error the sustaining of the State's oral motion to dismiss his plea in abatement, motion to quash the indictment and motion to obtain another commitment hearing.

His plea and motion, insofar as necessary to recite here, made the basic contentions which follow. While under arrest he sought unsuccessfully at least three times to telephone his mother, let her know where he was and get her to obtain a lawyer to represent him. The committing magistrate first announced that the commitment hearing would take place the following day, but without notice and in violation of *Code* § 27-403 conducted the hearing later on the same day and bound him over for trial. Under Georgia Laws 1956, page 796 (*Code Ann.* § 27-210) it was the duty of the arresting officer to notify him when the commitment hearing would be held, but this was not done. Appellant did not waive his right to counsel at such hearing. He did not fully comprehend the proceedings and had no opportunity to present witnesses in his behalf. Assistance of counsel was an indispensable right so that he could cross examine the State's witnesses, which the appellant did not know how to do. The only way for appointed counsel to defend him in the superior court would be by meaningful cross examination at the commitment hearing. The hearing was meaningless and a farce, and he was never able to determine what evidence the State had against him. The commitment hearing in this case was a critical phase of his prosecution, and he was entitled to counsel under the State and Federal Constitutions. His failure to have counsel at this hearing will deprive him of the effective benefit of counsel in his trial. Counsel subsequently appointed for him made demand upon the State for a list of witnesses and was given names of 51 and a description of another. Because of the large number of witnesses it is impossible for counsel to thoroughly investigate the case. His motion sought that the indictment be quashed and that he be given a commitment hearing at which he is represented by counsel.

The contentions thus made are not meritorious.

While a person accused of a felony has the right to counsel at all stages of proceedings designed to bring him to trial, and while cross examination of the State's witnesses at a commitment hearing can result in an accused's counsel obtaining valuable information for a later trial, the purpose of a commitment hearing is simply to determine whether there is probable cause

to believe the accused guilty of the crime charged, and if so, to bind him over for indictment by the grand jury. *Code* § 27-407; *Molignaro v. Balkcom*, 221 Ga. 150, 151 (143 SE2d 748) ; *Cannon v. Grimes*, 223 Ga. 35 (2) (153 SE2d 445) ; *Holmes v. State*, 224 Ga. 553, 556 (2) (163 SE2d 803) ; *Blake v. State*, 109 Ga. App. 636, 638 (137 SE2d 49), cert. den. 379 U. S. 924. The holding by this court in *Manor v. State*, 221 Ga. 866 (148 SE2d 305), relied upon by appellant, dealt with an entirely different question—purported waiver of a commitment hearing because of duress.

For the foregoing reasons the appellant's plea and motion was without legal basis and therefore was properly dismissed.

■ The second enumeration of error is that the court permitted State's counsel to describe in his opening statement to the jury how four other Negro men had raped the victim at another place earlier on the same night. This complaint is not borne out by the record. The transcript shows that the trial judge did not permit such remarks. On the contrary, at that point he ruled out all reference to what transpired at Grant Park and instructed the jury not to give any credit to it whatever, telling them that it had no bearing on the case. Thus, in this enumeration we do not reach the question of whether the remarks of State's counsel were proper as relating to the appellant's participation in a conspiracy.

■ The appellant in his third enumeration complains of the overruling of his motion for mistrial after the court stated in the presence of the jury that it was his "understanding that [the accused's] participation in it was at the old house." This motion was made immediately after the trial judge had instructed the jury as stated in the preceding division. In context, his statement was his understanding of what the State's counsel in his opening statement had said the State expected to prove, not what the evidence showed, and as such was not improper. Furthermore, the motion was merely "I would like to move for a mistrial," without any ground being given therefor. Grounds for mistrial must be stated at the time the motion is made. *Cherry v. State*, 220 Ga. 695 (4), 697 (141 SE2d 412). For both of these reasons this enumeration is not valid.

■ Many of the enumerations of error raise the common issue of whether the trial court should have allowed the jury to consider evidence of events transpiring in Grant Park prior to the appellant's alleged participation at the old house.

In this connection appellant complains of the following: the overruling of his objection to the companion's testimony as to the victim crying and hollering while being raped in Grant Park; permitting the victim to testify as to being raped there; refusal to rule out all evidence relating to the crimes there; allowing police officers to testify concerning the arrest of co-indictees, identified as participating in the Grant Park rapes and robbery, and of the removal from them of keys to the victim's automobile and articles belonging to her companion; and admission in evidence of such articles.

Appellant argues, in essence, that the evidence shows that he was not present when the prior events at Grant Park transpired; that there is no evidence that he knew about them; that they were not done during any conspiracy involving him with any of the other co-indictees; and that even if he was involved in a conspiracy at the old house, this would not justify admission of testimony as to what took place at Grant Park prior to the time that he entered into the conspiracy.

An evaluation of this contention involves well known principles of conspiracy.

Conspiracy is defined as "a corrupt agreement between two or more persons to do an unlawful act." *Fincher v. State,* 211 Ga. 89 (4) (84 SE2d 76).

It "may be shown by circumstantial as well as by direct evidence" (*Turner v. State,* 138 Ga. 808, 812 (76 SE 349)), and "by conduct as well as by an express agreement; and it is unnecessary that any antecedent agreement or understanding between the alleged conspirators be shown." *Ingram v. State,* 204 Ga. 164, 183 (48 SE2d 891).

Hence, "Where individuals enter into a conspiracy to commit a crime, its actual perpetration by one or more of them in pursuance of such conspiracy is in contemplation of law the act of all, and therefore is imputable to all, regardless of their presence or absence at the time it is committed." *Chambers v. State,* 194 Ga. 773, 781 (22 SE2d 487).

Significant here is the rule that "The relevancy of the acts and declarations of one conspirator is not affected by the particular time that he joined in the conspiracy. A person entering into a conspiracy already formed is deemed in law a party to all the acts done by the other co-conspirators, before or afterwards, in the prosecution of the enterprise. *Horton v. State,* 66 Ga. 690." *Daniels v. State,* 58 Ga. App. 599, 606 (199 SE 572).

As to duration, "A conspiracy may extend beyond the actual commission of the criminal offense charged. It may expressly or impliedly include such matters as . . . possession and disposition of the spoils,—depending on the nature and extent of the agreement as expressly or impliedly entered into by the alleged conspirators." *Burns v. State,* 191 Ga. 60 (8) (11 SE2d 350).

Upon consideration of the circumstances and the conduct of the individuals involved in the light of these rules, it is a logical deduction that what occurred first in Grant Park, and later in the old house, was a series of rapes with concert of action that included the appellant. The four men who first raped the victim in the park also did so later in the house and appellant's brother was in this group. Also, the group which included the appellant arrived at the old house shortly after the original group and its additional members had left. This indicates a likely connection and communication between the two groups. Furthermore, the appellant's fingerprint on the victim's car, which was initially in the park, is a circumstance which supports this theory.

There was enough evidence prima facie tending to show a conspiracy involving the appellant so as to authorize the admission of the evidence objected to, for the jury to give it such weight as they saw fit in determining whether there was a conspiracy and whether the appellant was a participant. See *Smith v. State,* 148 Ga. 332, 338 (96 SE 632); *Ingram v. State,* 204 Ga. 164, 183, supra.

In the rulings complained of on this issue the trial judge expressly admitted the evidence for the purpose of illustrating, if it did, a conspiracy between the four men previously at Grant Park and others contended to have joined them at the old house,

and instructed the jury that the Grant Park evidence was to be considered for that purpose only, that if it illustrated a conspiracy they should consider it, but if not, they were not to consider it at all. Later, in his charge to the jury, he instructed them on the law relating to conspiracy, and told them that it was a question for them to determine, whether or not a conspiracy had been shown.

For the reasons above given, we find no error in these enumerations relating to what transpired at Grant Park.

■ The appellant avers in another enumeration that the trial judge should not have permitted a police officer to testify as to what the victim told him had happened to her when he interviewed her at the service station after her escape. He contends that such testimony was hearsay. We cannot agree. The evidence shows that this was the first opportunity she had to tell any law enforcement officer of what had occurred. This testimony was part of the res gestae and its admission as outcry was not error. *Conoway v. State,* 171 Ga. 782, 784 (1) (156 SE 664).

■ It is contended in the thirteenth enumeration that the trial court erred in refusing to permit appellant to introduce testimony in a "Jackson v. Denno" type hearing prior to the introduction in evidence of his incriminatory statement. He urges that the purpose of such a hearing, pursuant to Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908, 1 ALR3d 1205), is to enable the trial judge to determine whether or not the statement was voluntary before permitting the jury to hear it, and that the refusal to allow him to introduce evidence in the hearing requires a new trial.

This contention cannot be sustained.

The statement which the officer testified the appellant made was merely that he was on Pulliam Street that night, without giving any time or place. While the old house was located on that street, appellant denied being there and also denied any participation or knowledge of the crimes, and the officer so testified. Thus, there was no confession or incriminatory statement which required a hearing pursuant to the Denno case.

Also, the appellant did not object to the statement or in any

way challenge it as being involuntary so as to come within the ambit of the Denno case. Admission in evidence of incriminatory statements by an accused, without objection, is not error. *Abrams v. State,* 223 Ga. 216, 217 (1) (154 SE2d 443). Furthermore, there was no showing by appellant of what evidence he expected to offer, and hence no showing of injury to him. *Smith v. State,* 224 Ga. 750 (164 SE2d 784).

■ The appellant states in his brief that he does not insist upon an enumeration of error complaining of the admission in evidence of an enlargement of a latent fingerprint. Hence it is waived and affords no basis for review.

■ The admission in evidence of four photographs is asserted as error. These show a hallway in the old house, a room therein, the springs and mattress there, and also a view of the house from the outside. These photographs were taken under a detective's supervision, and were identified by the victim's companion as correctly portraying the scene where the crimes were committed. In her testimony later the victim identified the appellant as one of her assailants there.

These photographs come within what was said in *Smith v. State,* 202 Ga. 851, 866 (45 SE2d 267) (one Justice not participating): "Photographs, diagrams, maps, plans, and similar items are generally admissible, when relevant, to describe a person, place, or thing, for the purpose of explaining and applying the evidence and assisting the court and jury in understanding the case." No error was committed in their admission.

■ Two enumerations relate to testimony of a police officer as to line-up identification of the appellant by the victim. One complains of denial of the motion to strike "his testimony about Mrs. Pierce's identification," and the other insists that it was error to deny his motion for mistrial which arose from such testimony. Appellant contends that the testimony was mere hearsay.

We cannot agree. This officer testified that he was present when the appellant was put into a line-up which was viewed by the victim. In response to the question "whether or not she made any identification," he replied, "Yes, Sir, she picked [the accused] out of the line-up." Later in his testimony he ex-

48

plained the line-up identification procedure. In view of her identification, recited above, it is not necessary to deal here with later portions of his testimony contended by appellant to be at variance. Any such conflict, if it did exist, went to the credibility of the officer's testimony as a whole. *Simmons v. State,* 220 Ga. 881 (2) (142 SE2d 798). It did not render inadmissible the portion quoted above and subject it to the blanket motion to strike, or to the motion for mistrial. Exclusion of the entire testimony on this subject, in bulk, was not required. See *Goddard v. Boyd,* 144 Ga. 18 (2) (85 SE 1013).

■ The remaining ten enumerations urge that the trial court erred in refusing to give certain requests in its charge to the jury. In our view rejection of these is not cause for reversal.

(a) Seven of these requests involve various aspects of the burden of proof and reasonable doubt. The principles of these requests were substantially covered in the charge which the judge gave. See *McCoy v. State,* 191 Ga. 516 (3), 518 (13 SE2d 193).

(b) One of the requests, to the effect that the fact that the accused did not flee or conceal himself could be considered as some evidence of innocence, was properly refused since it was not a correct statement of law. See in this connection, *Jesse v. State,* 20 Ga. 156 (6).

(c) The other two requests, relating to public opinion and the appellant's color, dealt with matters which were not in issue. For this reason they were properly refused.

We find no error in the conduct of this trial.

*Judgments affirmed. All the Justices concur.*