## 49696. BURKETT v. THE STATE.

WEBB, Judge.

The defendant was indicted for theft by taking, a felony, in the unlawful taking of "seven animals of the species known as cattle." General and special demurrers were filed to the indictment and were overruled. Because other charges were pending against defendant at the time of his arrest, he filed a plea in abatement and motion to quash. After a hearing, these defenses were also overruled. Trial was held, and the defendant convicted and sentenced to serve seven years. Motion for new trial was filed, heard and denied. Defendant appeals from the judgment and sentence and the denial of his motion for

new trial. *Held:*

1. The first complaint argued by defense counsel is that defendant was not given benefit of counsel at the preliminary stages of the charge in violation of named constitutional rights. However, the record discloses defendant was first arrested on a warrant for cattle stealing, was brought before a magistrate for the setting of bond (which was not a committal hearing); bond was thereafter made, and he was subsequently arrested and rearrested on various other charges, and tried, convicted, sentenced, and served a misdemeanor sentence for hog theft. The present indictment, based on the earlier warrant, was not returned until February 18, 1974, and the hearing on this plea occurred on February 27, 1974. No committal hearing had ever been requested by any of his counsel who were representing him from time to time. The record does not disclose a request or denial of a committal hearing, or the denial of right of counsel, but shows defendant has been in and out of jail on various other charges. Counsel failed to set forth any basis for his plea in abatement and motion to quash; nor does he cite any authority in support thereof. The case of *Manor v. State,* 221 Ga. 866 (148 SE2d 305), cited by counsel, is not applicable, and is entirely different on its facts, wherein defendant was kept in jail, stripped naked, and waived a committal hearing under duress and cruel and inhumane treatment. The Supreme Court there held defendant did not intelligently waive a committal hearing. Here defendant did not request a committal hearing, but was immediately released on bond, was subsequently arrested and rearrested on various other charges, and served time on one of these charges. There is no merit in this complaint.

2. Two of the large cows were alleged to have marks "with notched place in bottom of *left ear* and split in the end of ear." The demurrer contends defendant was entitled to know which ear contained the split in the end of ear, and his counsel cites *Hunter v. State,* 80 Ga. App. 432 (56 SE2d 199). In the *Hunter* case this court reversed a conviction on an almost identical demurrer, but as to an entirely different indictment. The indictment in the present case clearly referred to the cows' *left ears.* The

court did not err in overruling the demurrers.

3. (a) Defendant contends that there is a fatal variance between the allegata and the probata. There were seven cows in question, three of them being grown cows and the remaining four being heifers. The indictment here describes the three grown cows as follows: "one cow, female sex, weight 920 pounds, with notched place in bottom of left ear and split in end of ear, color black, *Black Angus breed,* left rear foot crippled, value of $300; one cow, female sex, weight 860 pounds, with notched place in bottom of left ear and split in end of ear, color black, *Black Angus breed,* not crippled, value $280; one *Black Angus cow,* female sex, weight 780 pounds, color black and grey, value of $300." (Emphasis supplied.) Three of the heifers were described as being "crossed Black Angus with Shorthorn."

The description at trial tracked the above description in the indictment, and the only "variance" was that there had been some Shorthorn breeding in the ancestry of the three grown cows. As Robert Fain, owner of the cattle and the prosecuting witness, testified on cross examination with regard to the first of the three cows: "And you say that she's colored black and that she's of the Black Angus breed. Now actually that's a mistake, it should be that she's a cross between Black Angus and Shorthorn? A. She'd be as much or more black than any other thing. Q. Yes sir, but she's as much one as she is the other, isn't she? Or do you know? A. Well, I'd think she'd be more bred up to Black Angus than Shorthorn, 'cause the Shorthorn has been out for several years." As to the second cow he testified on cross examination: "The cow would probably be 3/4 or 7/8 Angus but back in some of its ancestors it would have some Shorthorn breed in it."

On redirect examination, he testified: "Q. I believe you testified that these cows were approximately 7/8 Black Angus? A. Yes, sir. Mainly. Q. All right, sir. And you had been with this herd, one way or another, for a good many years, had you not? A. 10 or 12 years. Q. All right, sir. A. That ones that were old enough to be there. Q. And now these cows, the grown cows, the 920 pound cows, those that are described in the indictment as cows rather than heifers, all of these cows, were they or were they not

mainly Black Angus breed? A. That's right."

We regard the testimony describing the breed of the three grown cows as being substantially conformable to the description alleged in the indictment, and certainly not contradictory of it since the indictment does not allege that they were purebred Black Angus. The allegations that the four heifers were crossed Black Angus — Shorthorn is not an allegation that the three grown cows were a pure strain of Black Angus. The rule is that "In order to sustain a conviction of larceny, the evidence must make out the description of the stolen property as laid in the indictment or accusation, although such description may have been unnecessarily minute." *McLendon v. State,* 121 Ga. 158 (48 SE 902). However, the rule does not apply in reverse — the description at trial may be, and quite often is, more minute than the description laid in the indictment. Hence there is no fatal variance between the allegata and the probata with respect to these three cows, and the fact that the three Black Angus cows had some Shorthorn blood is " 'de minimis' in the extreme and certainly no basis for a reversal of this case." *Marchman v. State,* 132 Ga. App. 677 (5a) (209 SE2d 88).

"On the trial of a defendant charged with larceny, where there is some evidence descriptive of the stolen property which is substantially conformable to the description alleged in the indictment, and nowhere contradictory thereof, the identity of the stolen property is a matter addressed peculiarly and solely to the jury, and in such case there is no fatal variance between the allegata and the probata. See *Timmons v. State,* 14 Ga. App. 802 (82 SE 378) (cow); *Cross v. State,* 64 Ga. 443 (2) (hog)." *Lanier v. State,* 76 Ga. App. 261 (45 SE2d 689) (hog). Accord, *Nightengale v. State,* 94 Ga. 395 (21 SE 221) (brand of cow); *Green v. State,* 114 Ga. 918 (41 SE 55) (alleged weight of cotton proved with "substantial accuracy"); *Graham v. State,* 16 Ga. App. 221 (84 SE 981) (blue and white versus black and white speckled cow); *Sewell v. State,* 92 Ga. App. 48 (87 SE2d 443) (color discrepancy of cow); *Warren v. State,* 12 Ga. App. 695 (3) (78 SE 202) (number of cigars); *Mitchell v. State,* 15 Ga. App. 803 (4) (84 SE 205) (amount of "advance"); *Williamson v. State,* 28 Ga. App. 470 (111 SE 683)

(marking of bale of cotton); *Renfroe v. State,* 54 Ga. App. 215 (187 SE 623) (quantity of drugs); *Turk v. State,* 68 Ga. App. 95 (22 SE2d 206) (color of cow).

Moreover, we recently recognized that the "fatal variance" rule does not apply where the stolen property is identified as being the same as that described in the indictment. *Marchman v. State,* 129 Ga. App. 22, 24 (198 SE2d 425). This may occur where the property is described at the trial and a witness identifies it as being the property described in the indictment *(Sloan v. State,* 68 Ga. App. 92 (22 SE2d 333); *Lanier v. State,* 76 Ga. App. 261, supra) or where the defendant or accomplices admit that the property they stole belonged to the prosecuting witness. *Graham v. State,* 16 Ga. App. 221, supra; *Sewell v. State,* 92 Ga. App. 48, supra.

In the instant case, the prosecuting witness testified: "Q. Mr. Fain, I believe you were present at the time this indictment was drawn? A. Yes, sir. Q. And I was the one that sat there and drew it? A. Yes, sir. Q. And, I'll ask you whether or not the description that is contained in this indictment is the description that you gave me of the cattle that were missing from your farm? A. That's right."

The witness had a record of all his cattle and used it to give the same description of the missing ones to the law enforcement officers in order to locate them. As to finding them, he testified: "Q. Did you see any cows that particular night? A. Yes, sir. Q. All right, sir. And tell us what you discovered about the cows you did see? A. Well, the two main cows we were looking for was the white-faced heifer and the crippled cow. Q. Yes, sir. A. And we got to checking, well, the sheriff from Bacon County and myself and deputy sheriff Lanny Dean and two or three from the stockyard down there, a couple from the stockyard I think, we all went back there and the description I had given of the cows matched the ones that was in the pens there. Q. In other words, you saw your cows there then? A. Yes, sir... Q. But you did see six of the seven cows? A. Yes, sir. Q. How did you know they were your cows, Mr. Fain? A. Well, I knowed from the general description of the cows, and then the three grown cows were notched in the left ear. Q. And you knew that, you had seen them before and you would recognize them by

their appearance? A. Yes, sir. Q. And you could recognize each one individually? A. Yes, sir."

The upshot of this testimony is that the cows which were found at the stockyard were the same ones described in the indictment, since the witness testified that the cows matched the description which was given both to the law enforcement officers and to the district attorney, who transcribed the description into the indictment. Additionally another participant in the crime, Roger Law, who had pleaded guilty, as he testified, to "this particular theft by taking of cattle of Mr. Robert Fain's," testified in great detail as to how he, defendant, and others penned up 25 of Fain's cattle, loaded seven into a horse trailer, sold the seven at the stockyards and divided the money. This testimony, in conjunction with the description of the animals, shows no "fatal variance." *Graham v. State,* 16 Ga. App. 221, supra; *Sloan v. State,* 68 Ga. App. 92, supra; *Lanier v. State,* 76 Ga. App. 261, supra; *Sewell v. State,* 92 Ga. App. 48, supra.

"This court has recently indicated several times that it will not overturn a conviction for some immaterial variance. *Manning v. State,* 123 Ga. App. 844 (182 SE2d 690); *Parker v. State,* 124 Ga. App. 317. One of the main purposes of the indictment is to give the person charged notice of that particular crime against which he must defend. Most 'variances' take nothing away from the perfectly adequate notice contained in the indictment." *Green v. State,* 124 Ga. App. 469, 470 (184 SE2d 194).

(b) Assuming arguendo that there was a "fatal variance" as to the three grown cows, a reversal is not authorized. The crime for which defendant was tried and convicted was theft by taking (Criminal Code § 26-1802), and since the value of the seven cows exceeded $100 he was subject to imprisonment for not less than one nor more than ten years. Criminal Code § 26-1812. Defendant was sentenced to serve seven years.

There is no dispute that, as to the four heifers, there was no fatal variance. The testimony showed that the minimum value of these four was $885. Hence the conviction and sentence of seven years would have been authorized under § 26-1812 for the theft of only those four of the seven cattle.

In *Lowe v. State,* 57 Ga. 172 (2), where defendant was indicted and found guilty of stealing *two* hogs, it was held: "The proof only justified the conviction for stealing *one* of the hogs. The penalty or punishment prescribed by the law, and inflicted by the judge, being the same *whether one or both were stolen,* the verdict is sustained by the evidence, and the motion for a new trial on this ground was properly overruled." (Emphasis supplied.)

In *Perdue v. State,* 225 Ga. 814 (171 SE2d 563), defendant was convicted of robbery by force and sentenced to twenty years confinement. The Supreme Court, following *Lowe,* supra, held in Division 3: "Another enumeration urges that it was error to allow the jury to determine whether or not a foundation had been laid to enable the victim to testify that the money alleged to have been stolen was 'lawful United States currency.' Appellant argues that the court should have ruled on this question since it involved qualification of the witness to testify on this subject. However, we regard this as inconsequential. The indictment alleged that the property taken from the victim included not only $76 in 'lawful United States currency,' but also a watch of the value of $50 and a ring worth $35, and the evidence supported the allegations as to the watch and ring. Therefore, there was sufficient evidence to support the verdict without regard to whether the money was 'lawful United States currency.' "

And, following *Lowe* and other cases, we held in *Howard v. State,* 128 Ga. App. 807, 808 (6) (198 SE2d 334): "The shoplifting count as to which a new trial was not granted alleged that defendant removed six pairs of men's pants having a total value of $102, while the evidence indicated defendant removed seven pairs of pants with a value of $17 a pair ($119 total). This does not constitute a fatal variance requiring reversal."

"The sole assignment of error is that there was a variance between the allegata and the probata. The charge was cattle stealing. The allegations purported to describe four animals. If the proof sustained the stealing of only one of the animals alleged to have been stolen as described the conviction will stand." *Turk v. State,* 68 Ga. App. 95, supra. Finding in that case that testimony as to

a black steer was substantially conformable to the indictment's description of a "dark-color steer," the conviction was affirmed without determining whether or not the proof as to the other three animals described in the indictment was at variance with the allegations.

Accordingly the judgment must be affirmed.

*Judgment affirmed. Pannell, P. J., concurs in the judgment. Evans, J., concurs specially.*

SUBMITTED SEPTEMBER 4, 1974 — DECIDED JANUARY 17, 1975.

*Boatright & Boatright, J. Laddie Boatright,* for appellant.

*W. J. Forehand, District Attorney,* for appellee.

EVANS, Judge, concurring specially.

The indictment alleges the theft of seven cows, three of which were Black Angus, and four of which were Black Angus mixed with Shorthorn.

I concur in the judgment of the majority, which affirms the conviction on the theory that where several articles are alleged to have been stolen, and the jury convicts as to each of the allegedly stolen articles, the verdict should not be set aside if one or more (but not all) of the articles are proven to have been stolen. See *Lowe v. State,* 57 Ga. 172 (2).

I do not agree with the majority opinion's statement that the allegata and probata as to the entire seven cows was sufficiently met. The evidence of the prosecutor is that *all* of his cows were Black Angus mixed with Shorthorn; whereas the allegations of the indictment can have no other meaning than that three of the cows were Black Angus *and were not mixed;* and that only four of the cows were Black Angus mixed with Shorthorn.