### 73413. HALL v. THE STATE.
(353 SE2d 614)

POPE, Judge.

Ulysses Hall brings this appeal from his conviction of felony theft by taking. Appellant raises three grounds challenging the trial court's denial of his motion for directed verdict of acquittal. *Held*:

1. "On appeal of the overruling of a motion for directed verdict of acquittal, the appellate court can consider all of the evidence in the case and this is true whether the denial of such motion occurs at the close of the [S]tate's case or at the conclusion of all evidence. *Bethay v. State*, 235 Ga. 371 (219 SE2d 743) (1975)." *Causey v. State*, 154 Ga. App. 76, 77 (267 SE2d 475) (1980). With this principle in mind, we turn to the facts of record.

On the date in question appellant was employed by Sears, Roebuck and Company as a stockman assisting customers in the stock room. As was explained by several witnesses, when a Sears customer purchases a major appliance, such as a television set, on the floor, the

salesperson rings up the sale on the cash register. The salesperson enters appropriate customer information on the cash register, and the customer is then given a receipt which is a carbon copy of the sales slip and sent to the package pickup area. When the salesperson rings up the sale, information he has fed the cash register is simultaneously printed out in the stock room. The printed information is called a PEP (Prompt Easy Pickup) ticket. The purpose of printing out the PEP ticket is to give the stock room employees time to get the merchandise ready for the customer. The stockman pulls the PEP ticket off the printer, leaving a carbon of the ticket on the printer. He then goes to the area where the particular type of merchandise is kept, matches the stock number on the PEP slip with the number printed on the box or carton, and then delivers the merchandise and PEP ticket through a swinging door to the pickup area. Sears' policy is that no merchandise may be pulled by a stockman without a PEP ticket.

The package pickup area is manned by another employee, the greeter-dispatcher, who greets the customer who has just made his purchase on the floor, verifies that the customer's receipt matches the PEP ticket and merchandise as to stock number, and logs in that the merchandise was delivered to the customer. The log books are kept current even during a rush. The stockman carries the merchandise to the customer's car. When the greeter-dispatcher goes to lunch, a stockman takes his or her place. When a stockman is filling in for the greeter-dispatcher, he is not allowed to leave the package pickup area to go to the stock room. The stockmen are trained to know the duties of the greeter-dispatcher and store policy as to that position, such as matching PEP tickets to customer receipts and merchandise, and logging deliveries.

Patricia Lynn Wallace testified that on the date in question, while she was working as the greeter-dispatcher, appellant asked her several times when she was going to lunch. She thought he was just being a pest, but she assigned him her task as greeter-dispatcher when she went to lunch. Shortly thereafter, A. A. Butler, who was employed as a stockman, observed appellant talking with a young female in tight pants at the customer service desk. She had no paperwork, such as a receipt, in her hands. Appellant appeared to be writing something in the log, but when Butler went over to look, nothing had been written. (Butler had earlier overheard appellant telling a female who had called him on the telephone to come about 2:00 p.m.) The printer then began printing out PEP tickets for two television sets and Butler went to pull the sets from the stock room. Butler testified that while in the stock room, while appellant was acting as the greeter-dispatcher, he observed appellant in the stock room pulling two television sets in contravention of store policy. Later, But-

ler saw appellant with two more television sets and became suspicious. He asked appellant where the PEP tickets for the latter two sets were, and appellant, after first fumbling around his pockets, stated that Keith Foye, another stockman, had told him to pull them. Foye denied having told appellant to pull the television sets, and the duplicate PEP ticket printout showed only two sets, which Butler himself had pulled.

Butler stated that a young female wearing tight pants had been talking with appellant before the subject television sets were pulled. Later, he saw what appeared to be the same two sets that he had first seen appellant pull in a blue Plymouth station wagon. The same young female who had earlier been seen speaking with appellant was in the driver's seat and a male was standing outside. He saw appellant "wave off" the station wagon, whereupon Butler walked to the loading dock, wrote down the tag number of the station wagon and called security.

Paul Phillip Morris, a Sears truck driver, was at the store that afternoon as a customer, picking up some purchases he and his wife had made. He had backed his car up to the loading dock and was standing there waiting for his wife. Morris saw a female in a tight parachute-type outfit motioning for a blue Plymouth station wagon to pull up. Two men pulled up in the Plymouth in front of other people who were already there waiting for their purchases. They pulled the car right up against Morris' car. Morris then saw the same woman walking with appellant out of the door of the stock room. Appellant was carrying two television sets and was in such a hurry that he hit the doors and bumped over the curb behind the Plymouth. Appellant then snatched the hand truck from under the cartons and went right back into the building. No paperwork was exchanged. The incident caught Morris' attention because it was unusual; usually, when a stockman brings merchandise out, he helps the customer to get it in the car and thanks him.

Appellant testified that the young female in tight pants who had been seen by Butler and Morris came to the customer desk in package pickup while he was working there as a greeter-dispatcher for Wallace. According to appellant, the woman had a retail slip authorizing her to pick up a thirteen-inch television set and one nineteen inches. Appellant stated that he did not know the woman. Appellant admitted that he did not look for a PEP slip verifying the woman's purchase, and he went to get the television sets even though he was not supposed to leave the package pickup area. He stated that he put the television sets in the woman's car. Appellant testified that he got the other two television sets because Foye told him to. Appellant denied that he stole the television sets from Sears or that he helped anyone else steal them.

2. Appellant's first enumeration cites as error the denial of his motion for directed verdict on the ground that the State failed to prove a material allegation of the indictment, to wit: that the property allegedly stolen was two televisions. The basis for this assertion is that the subject television sets were in sealed boxes at the time of the alleged theft and no one actually saw the sets themselves. The evidence also showed, however, that the markings on the boxes indicated that television sets were contained therein. There was no evidence suggesting that this was not the case. Indeed, State's witness Morris testified that he was "pretty sure" something was in the boxes because when appellant came "off the curb with them on the hand truck, if they had been empty boxes, the hand truck wouldn't have made the noise [it] made."

" 'On the trial of a defendant charged with larceny, where there is some evidence descriptive of the stolen property which is substantially conformable to the description alleged in the indictment, and nowhere contradictory thereof, the identity of the stolen property is a matter addressed peculiarly and solely to the jury. . . . [Cits.]' " *Burkett v. State*, 133 Ga. App. 728, 731 (212 SE2d 870) (1975). Moreover, the identity of the stolen property in a criminal case may be established by circumstantial evidence where such evidence is sufficient to exclude every other reasonable hypothesis save that of the guilt of the accused. *Worley v. State*, 91 Ga. App. 663 (1) (86 SE2d 702) (1955). We find the record evidence in this regard did not demand a finding in favor of appellant and, further, was more than adequate to convince any rational trier of fact of appellant's guilt beyond a reasonable doubt. See *Wadley v. State*, 139 Ga. App. 744 (1) (229 SE2d 545) (1976); see also *Maddox v. State*, 152 Ga. App. 384 (1) (262 SE2d 636) (1979). Thus, the ground asserted here provides no basis for reversing the trial court's denial of appellant's motion for directed verdict of acquittal. See *Elzey v. State*, 168 Ga. App. 633 (309 SE2d 906) (1983).

3. Appellant's second enumeration challenges the denial of his motion for directed verdict on the ground that the State failed to show that appellant was in lawful possession of the subject television sets as alleged in the indictment. The indictment charged that appellant, "being in lawful possession thereof, did unlawfully appropriate two (2) televisions. . . ."

"The statute upon which the indictment was based allows conviction for the offense if committed in the manner alleged, or alternatively, by an unlawful taking. See [OCGA § 16-8-2]. However, the [S]tate was obliged to prove its case under the conversion theory set out in the indictment. [Cits.] Assuming *arguendo* that [the State's evidence was] entirely inconsistent with initial lawful possession, as [appellant] argues, the jury was authorized to find him guilty on the basis of his own [trial testimony]." *Cutter v. State*, 168 Ga. App. 651

(310 SE2d 16) (1983). That is, the jury could have concluded that appellant, as a stockman employee, was authorized to pull the television sets in question, but that he was not authorized to then "appropriate" same. See generally *Castillo v. State*, 166 Ga. App. 817 (1) (305 SE2d 629) (1983); *McKenzey v. State*, 125 Ga. App. 508 (1) (188 SE2d 116) (1972). This enumeration of error also provides no basis for reversing the denial of appellant's motion for directed verdict.

4. Appellant's remaining enumeration challenges the adequacy of the State's proof that the value of the subject television sets exceeded the $500 necessary to prove the felony grade of theft by taking. Ed Shook, an area sales manager for Sears, testified that he was familiar with the retail prices of items sold in the store such as television sets and that one of the sets in question "sells for $549.99" and the other "sells for $379.99." Appellant contends that this testimony only showed the prices as of the date of trial, not as of the date of the alleged crime. We do not view Shook's testimony as compelling this conclusion, but even assuming the correctness of appellant's contention, the record also showed that in response to questioning concerning the prices of the subject television sets, appellant himself testified that one set cost "four-ninety something or five-ninety something" and the other "about three-something." This evidence sufficiently showed the value of the property taken to be in excess of $500. See *Traylor v. State*, 163 Ga. App. 473 (1) (294 SE2d 707) (1982); *Cox v. State*, 137 Ga. App. 794 (1) (224 SE2d 845) (1976). Accordingly, this enumeration of error is without merit.

*Judgment affirmed. McMurray, P. J., and Carley J., concur.*

DECIDED FEBRUARY 9, 1987.

*John D. McCord III*, for appellant.
*Robert E. Wilson, District Attorney, R. Stephen Roberts, Barbara Conroy, Assistant District Attorneys*, for appellee.