## GARRETT *v.* THE STATE.

1. The court erred in excluding the testimony set forth in the first ground of the amendment to the motion for a new trial. This evidence was admissible both as a part of the res gestæ of the transaction, because it was apparently free from device or afterthought, and also for the purpose of explaining the motive and conduct of the defendant. While hearsay testimony is generally inadmissible, when information, conversation, or similar evidence is pertinent to explain conduct or ascertain motive, such evidence, so far as these purposes are concerned, changes in character from hearsay to original evidence throwing light on conduct or motive. Where evidence tends to ascribe a particular motive for testimony of a witness, it is competent to disprove the existence of such motive, and hearsay may be admitted for this purpose.

2. The charge of the court should always be adjusted to the evidence of the particular case on trial. Under the facts of this case it was error to charge the principle embodied in § 70 of the Penal Code, in view of the fact that the conduct of the defendant was equivalent to a call for help, which was heard by her neighbors; and under the circumstances this amounted to a peaceful "measure" to prevent the entrance of the deceased into her dwelling, if indeed it was not an effectual remonstrance under the circumstances disclosed by the record. And after giving § 72 in charge to the jury, the court should have given in charge immediately following and in connection therewith the provisions of § 71, as requested.

3. It is unnecessary to deal with the several grounds of the motion for a new trial based upon alleged newly discovered evidence, since, by reason of reversal of the judgment refusing a new trial as set out in the two preceding headnotes, the defendant will have an opportunity of introducing, upon another trial, the evidence presented in the motion.

No. 3887. MARCH 13, 1924.

Murder. Before Judge Wright. Floyd superior court. July 12, 1923.

*Porter & Mebane,* for plaintiff in error.

*George M. Napier, attorney-general, E. S. Taylor, solicitor-general,* and *Seward M. Smith, asst. atty.-gen.,* contra.

RUSSELL, C. J. The defendant was indicted for murder, and upon the trial of the case was found guilty, with a recommendation

for mercy. She filed a motion for a new trial, and assigns error upon the overruling of the same. On the trial of the case the State offered evidence tending to show that the deceased was shot while he was in the house of the defendant and after he had gone there to visit her. Evidence was introduced to show that the deceased and the defendant, who was a married woman, had been going together for sometime; and the main witness for the State testified that he was in the room when the shot was fired, and that the defendant remarked "I'll give you taking car rides with other women," and then picked up a pistol and shot the deceased. The witness testified that he ran out of the house and went to his home, and for two days did not say anything about having witnessed the killing.

The defendant contended, that she was alone at home on the night of the homicide, as her husband was working; that his regular work did not require him to be away at night, but he was working for some one else that night; that about eight o'clock she heard some one come on her porch, and, in response to her question as to who it was, the answer came, "Charlie Garrett" (this was the name of her husband); that she was frightened, and called to her mother, who lived next door, and when she did this the person ran off the porch; that she got her nephew, who lived with defendant's mother, to go with her to a store in the neighborhood, where she attempted to telephone the police station, but was unable to get any answer to her calls, and she then returned home and her nephew went to the house of defendant's mother; that shortly thereafter she heard some one at her window attempting to open it; that it was the same person who had previously come upon her porch and attempted to impersonate her husband and thus gain admission to the house; that she ran out of the house to get in her mother's house, and as she did so she saw the person standing by the window, and shot him. She offered evidence to substantiate her statements that some one had come upon her porch, and that she had called for help and had then gone to use the telephone, and her inability to get in communication with the police. A witness for the defendant testified that the deceased had come to him on the night of the homicide, and closely questioned him as to whether the husband of the defendant was at home that night, and, upon being told that he was at work in the place of the witness, said he thought he would go

on home, and turned and left the church where the conversation took place just a short while before services began. The defendant offered witnesses to show that the decesaed was found outside of the house of the defendant.

1. In the first ground of the amendment to the motion for a new trial it is insisted that the court erred in ruling out the following portion of the testimony of Charlie Garrett (the nephew of defendant's husband), a witness for the defendant: "She says, 'Who's that?' and he says, 'Charlie Garrett,' and she says, 'Who?' and he says, 'Charlie Garrett,' and she came to the window and called, 'Daddy, Daddy,' and Grandmother says, 'Daddy aint here,' and she says, 'Some old drunk negro is on my porch.'" "Movant says that the above conversation occurred, under the testimony of the said Charlie Garrett, fifteen minutes before the defendant shot the deceased; . . that said witness, Charlie Garrett, had just described that somebody had come upon the defendant's porch and knocked on the door, and that part of the conversation between the defendant and the person who had come upon the porch of the defendant . . was a conversation, as movant contends, between a person who afterwards came back to the home of the defendant and tried to break into her house, and who turned out to be Johnnie McClaridy, the deceased; that the latter part of said evidence so ruled out by the court . . was a conversation between the mother-in-law of the defendant and the defendant," and "said conversation occurred only fifteen minutes before the shooting of the deceased by the defendant." It is insisted that the exclusion of the testimony was error, because the conversation was a part of the res gestæ, and that it was also admissible to explain conduct and ascertain motive on the part of the defendant, and motive and conduct of the deceased. We think the court erred in excluding this testimony from the consideration of the jury. It was apparently free from suspicion of device or afterthought. From the portion of the testimony of the witness which was admitted by the court it appears that the conversation (the testimony regarding which was ruled out) took place some fifteen minutes before the shooting. The witness had testified that he had seen some one on the porch of the defendant's house and had heard them knocking on the door; that after he heard the knocking he went to the house of the defendant (his aunt), and then went with her to call the police; that his aunt

was unable to get in communication with the police station, although she called twice, and they then returned to their homes, and in a few minutes he heard the shot fired. We think this testimony related to declarations so closely connected with the act in time and place as to make them a part of the res gestæ, and therefore admissible. Penal Code, § 1024; *Stiles* v. *State,* 57 *Ga.* 183 (4); *Lampkin* v. *State,* 87 *Ga.* 516 (13 S. E. 523); *Swain* v. *State,* 149 *Ga.* 629 (101 S. E. 539).

We think this testimony was also admissible for the purpose of explaining the conduct of the deceased, and to ascertain the motive which prompted the shooting. The defendant contended that the person who came upon her porch and sought to gain entrance by fraudulently holding himself out as her husband was the same person who later returned and tried to force open her window and whom she shot while attempting this unlawful act. It is evident that this testimony was essential to the substantiation of her contention and defense that she had frightened and repelled the invader once by calling for help, and that when he returned she was forced to employ violent measures, not to kill the deceased, but to prevent this second attempt to enter her house from succeeding. If in truth some one had, fifteen minutes before, fraudulently attempted to enter her house, she would certainly be acting under a more reasonable fear in repelling the would-be invader on the second attempt than if such was not the case; and this fact would also tend to show that the defendant in good faith believed that the killing was necessary, because she had previously employed peaceful measures to prevent the entrance of the deceased. Penal Code, § 1023; *Swain* v. *State,* supra. This testimony also related to a substantive fact the proof of which, under the testimony of the main witness for the State, became necessary to the establishment of the true circumstances leading up to and surrounding the homicide. The defendant contended that she shot the deceased after she had been frightened from her house by his trying to raise her window, and after she had come out of her house and while he was standing by the window. The witness for the State testified that at the invitation of the defendant, whom he said he did not know until that time, he went to the defendant's home to wait for the deceased; that when the deceased came into the room where he and the defendant were sitting, the defendant rebuked the deceased for going with

other women, then picked up a pistol and shot the deceased. In view of this direct conflict, the manner of approach of the deceased became a most material substantive fact, and competent evidence regarding the same should have been admitted to the jury for their consideration in arriving at the true facts leading up to the difficulty.

2. We shall consider the third, fourth, and fifth grounds of the amendment to the motion for a new trial together. In the third ground the plaintiff in error complains that the judge erred in giving in charge to the jury § 70 of the Penal Code, upon the ground that it was inapplicable to the evidence adduced in the case, and placed upon the defendant a greater burden in order to justify the killing than the law requires; that under this instruction the jury would be compelled to find that the deceased was attacking either her habitation, property, or person, by violence or surprise, in a riotous manner for the purpose of committing a felony, whereas, under the defense presented by the defendant, it was not necessary that the jury should find that the object and intention of the deceased in invading the habitation of the defendant was to commit a felony either on the property or person of the defendant. Plaintiff in error insists that under the defendant's statement and the evidence in the case the jury would have been authorized to find that the defendant had the right to kill the deceased, under the principle of law embraced in § 72 of the Penal Code, if they found that the deceased was forcibly attacking and invading her home, and that after circumstances had transpired which were equivalent to showing that persuasion, remonstrance, and gentle measures had been used, if the attack and invasion of her home could not be prevented except by killing the deceased and the killing was necessary to prevent such attack and invasion, or, if not indeed absolutely necessary, yet appeared to the defendant acting in good faith to be so necessary, the defendant should be acquitted. We think the objection is well taken, because there is no evidence in the case nor any statement upon the part of the defendant warranting the charge upon the law as to preventing a felonious attack or tending to show that any act was done in a riotous or tumultuous manner; and for that reason this instruction which was not adjusted to the evidence of the particular case must be presumed to have been confusing and misleading to the jury.

The error was aggravated by the instruction of which complaint is made in the fourth ground of the amended motion. This instruction, though absolutely sound as an abstract principle of law, was not adjusted to the evidence in this particular case. The instruction complained of was as follows: "If you find that the defendant shot the deceased and did so to protect her own person, or her habitation, against a felonious assault (and that's an assault punishable by imprisonment in the penitentiary; assault with intent to murder would be a felony, or an attempt to rob would be a felonious assault; attempt to commit burglary would be a felonious assault, and other like crimes), so, if you find that she shot to repel such felonious assault on her person or her habitation, she would be justifiable. And even though such felonious assault might not have been impending either upon her person or property, and even though there may have been no manifest intent or endeavor in a riotous or tumultuous manner to enter her habitation for the purpose of assault or offering personal violence to any person dwelling or being therein, yet if the defendant actually believed such an assault was impending, and acted in good faith to repel such an assault, she would be justifiable." In view of the nature of the evidence this instruction imposed on the defendant the burden of proving another and different statement of facts than those presented by her.

In the fifth ground of the amended motion complaint is made that the court refused a written request that "And I charge you that the killing would be justifiable where the circumstances were such as to excite the fears of a reasonable man that such an attack was intended, even if at the time of the killing there might not have been, in fact, any real necessity to kill in order to prevent the attack." This instruction was requested to be given immediately following the request to charge § 72 of the Penal Code, and in connection therewith; and we think it was error to refuse the request as presented. It is true that the trial judge more than once referred to this principle and gave it in charge to the jury in connection with the instruction as to § 70 of the Penal Code. However, as the defendant relied upon the provision of § 72 as her defense, and as evidence was presented which required an instruction as to the principle contained in § 72, and as the defendant would have been justified as much if she bona fide believed there was a necessity for the killing under the provision of § 72 as if it had in fact been

absolutely necessary to kill, she was entitled to have the doctrine of reasonable fears applied to the particular defense upon which she relied, as if she had relied upon the principle of defense of her own person and the preservation of her own life under circumstances of most urgent necessity.

3. In view of the errors which we have pointed out, it is not necessary to rule upon the several grounds of the amendment to the motion for a new trial predicated upon alleged newly discovered evidence; for, upon the new trial which we feel constrained to grant, the defendant will have an opportunity of presenting any evidence which was not within her power at the previous trial.

*Judgment reversed. All the Justices concur.*

BECK, P. J., and ATKINSON, J., concurring specially. We concur in the ruling made in the first division of the opinion, holding that the court erred in excluding the evidence of the defendant's witness, Charlie Garrett, as set forth in the first ground of the amendment to the motion for a new trial.. We are of the opinion that this evidence was material and admissible to explain conduct and to ascertain motive on the part of the defendant; though we do not concur in the holding that this conversation was admissible as being a part of the res gestæ. Civil Code, § 5763.