## 18716. CRAWFORD v. THE STATE.

CANDLER, Justice. Henry A. Crawford and Harold Griggs were jointly indicted for murder in Early County. The indictment alleges that they unlawfully and with malice aforethought killed James Bush on November 14, 1953. They were separately tried, and upon conviction for murder each was sentenced to serve in the penitentiary for the remainder of his life. Crawford moved for a new trial, basing his motion on the usual general grounds and several special grounds. His motion as amended was denied, and the exception is to that judgment. *Held:*

1. On the trial of the instant case, the judge charged the rule applicable to conspiracy. It is not insisted that the charge as given was abstractly incorrect, but it is alleged in one of the special grounds of the motion for new trial that it was unauthorized by the evidence. There is no merit in this contention. Crawford, Griggs, and Bush were all professional gamblers. Until a short time before Bush was killed, they all lived in or near Phenix City, Alabama. Just prior to the killing, Crawford and Griggs had been lodging together at Paradise Rest, a tourist court on Opelika Road in Alabama. Crawford and Bush had fallen out about $2,800 which the former had won in a gambling game in which they played. Crawford had moved to Blakely, Georgia, about a month before the killing. On Monday night before Bush was killed on the following Saturday night, Griggs came to the home of Crawford in Blakely, and remained there except for one night until his arrest after the killing. Bush also came to the home of Crawford on the same Monday night and, after talking with Crawford and Griggs, he told Lum Griggs: "Them people think I am double-crossing them. I got $10,000 coming and them people think I am double-crossing them." On the next day Crawford told Lum Griggs that he started to shoot James Bush the night before when he came to his home. During the interim between Monday night and the killing on the following Saturday night, Bush frequently telephoned Crawford from Phenix City, each time demanding money. Bush came back to Blakely about 7 p. m. on the day of the killing. Crawford told a deputy sheriff of Early County that he wanted to talk with Bush at his home that night in an effort to adjust their differences and arranged for him and another officer to be near his home and in calling distance at 7:40. Bush came to Crawford's home at about 7:45 and parked his car in the driveway near a street light in front of Crawford's house. The porch light at Crawford's home was on, and the deputy sheriff with whom Crawford had talked and a city policeman of Blakely could see Bush plainly as he walked from his car to Crawford's front door. He had no weapon of any kind in his hands. He knocked on the door with his left hand and pulled the screen door open with his right hand. Someone inside opened the door, Bush entered, and simultaneously with the closing of the door they heard the report of two "loud" pistol shots. A minute later they heard the report of several "muffled" pistol shots. They entered the house and Crawford said, "I had to shoot him." A second later Griggs said: "I am the man that shot him. I shot him from over there back of the door." Bush was shot six times in the back of his head and in

the back of his neck, and Dr. Herman Jones testified that either one of the wounds would have killed him instantly. He fell on his face and stomach and his feet were within a step and a half of the door through which he entered. One of the bullets which entered the back of his head or neck embedded itself in the wall of the room, one lodged in the end of his nose, one in his cheek, and three, after passing straight through his head, entered the floor directly under his face. Crawford and Griggs were alone in Crawford's house when Bush arrived, the family of the former having been sent away before his arrival. Bush was killed with Crawford's pistol, one which Crawford, according to his statement to the jury, got and brought into the room where Bush was killed immediately before Bush's arrival. After Bush was killed, his pistol was on the floor with his hand resting on top of it; however, Dr. Herman Jones and Dr. J. C. Standifier, who examined the body of the deceased and inspected the room in which he was killed, each testified that it was his respective professional opinion that Bush did not have the pistol in his hand at the time he was shot. They each related in detail the facts on which they based their opinion. After the killing, Crawford had some scratches on his neck and some blood on the collar of his shirt, but Dr. Herman Jones testified that he examined scrapings taken from under the finger nails of James Bush and found no evidence of blood or skin.

Conspiracy consists in a corrupt agreement between two or more persons to do an unlawful act, the existence of which agreement may be established by direct proof, or by inference, as a deduction from acts and conduct, which discloses a common design on their part to act together for the accomplishment of the unlawful purpose. Applying this rule to the facts stated above and to those which will be related in a subsequent division of this opinion, a charge on conspiracy was fully authorized. See, in this connection, *Chappell* v. *State*, 209 *Ga.* 701 (75 S. E. 2d 417), and citations.

2. Over an objection that it put the character of the accused in issue when he had not previously elected to do so, Lum Griggs, a witness for the State, was permitted to testify that the defendant, on Tuesday before the killing of James Bush, told him that "he knocked in a joint and got $62,000 out of it." The admission of this evidence is complained of in one of the special grounds of the motion for new trial. The evidence complained of was offered and admitted for the purpose of showing motive for the killing of Bush, and in *Anderson* v. *State*, 206 *Ga.* 527 (1) (57 S. E. 2d 563), this court unanimously said: "Where evidence is admissible to show motive and to connect the accused with the crime charged, the mere fact that it may tend incidentally to put the character of the accused in issue would not render it inadmissible." Another witness for the State testified without objection that the defendant Crawford was on a "hot spot" with some Phenix City people. Lum Griggs also testified without objection that James Bush, on Monday night before the homicide on the following Saturday night and while at the home of the defendant Crawford, said: "Them people [Henry A. Crawford and Harold Griggs] think I'm double-crossing them. I got $10,000 coming and them people think I am double-crossing them." And, the defendant Crawford in his statement to the jury

said: "Several days after I reached Early County and was living here, I got a call from Phenix City, from a man by the name of James Bush. Mr. Bush said over the telephone on the first call that he had heard there had been a robbery in Fitzgerald, Georgia; that a negro that worked for him on different robberies, told him I had the money from this robbery and that he wanted it. I told Mr. Bush that I didn't know what he was talking about, that I didn't have any money, and I didn't appreciate him calling me. He kept calling me, insisting I did. Said his boss in Phenix City, Head Revell, who is head of a racketeering concern in Phenix City, he worked for, was on his neck in Phenix City and wanted him to do something about it. I kept insisting I knew nothing about it. He ended the conversation by saying, 'If you don't do something about it, I am coming to see you.' The next day I had another telephone call something similar to the first one. I then tried to convince Mr. Bush I knew nothing about what he was talking, that I had no money, and I didn't want him coming to Blakely to see me; and that I was not coming back to Phenix City." Lum Griggs, on cross-examination, also testified: "Henry Crawford, not knowing me any better than he did, told me about that money. He told me what he had. He didn't tell me where he got it. He told me that he had $62,000, although I was not a special friend of his." In these circumstances we think that the evidence objected to was admissible for the purpose of showing motive. Hence this ground of the motion for new trial affords no reason why the judgment complained of should be reversed. For like rulings, see *Frank* v. *State,* 141 *Ga.* 243 (80 S. E. 1016); *Hill* v. *State,* 148 *Ga.* 521 (97 S. E. 442); *Wilson* v. *State,* 150 *Ga.* 285 (2) (103 S. E. 682); *Williams* v. *State,* 152 *Ga.* 498 (110 S. E. 286); *Cooper* v. *State,* 182 *Ga.* 42, 51 (184 S. E. 716, 104 A. L. R. 1309).

3. The State's witness Lum Griggs testified that Harold Griggs made a telephone call on Saturday before James Bush was killed that night. The solicitor-general, in the course of his argument to the jury, said that Lum Griggs had testified that Harold Griggs told him that he had, while they were in Columbia, Alabama, made a telephone call to James Bush during Saturday morning before Bush was killed that night. The accused, through his counsel, promptly moved for a mistrial on the ground that the solicitor-general had misquoted the evidence, and that his incorrect statement of the evidence was highly prejudicial to the defendant's case. The court promptly instructed the jury to disregard the statement thus complained of, and after doing so refused to grant a mistrial. The motion for mistrial was then renewed on the ground that the injury done to the defendant's case by the solicitor's remark had not and could not be removed by the instruction given to the jury. We do not concur in this. The injury thus inflicted was not so grave and prejudicial that its injurious effect could not be effectually overcome by an instruction from the court to disregard the solicitor's misstatement of the evidence. The jury knew before the judge instructed them to disregard the complained of remark that there was no foundation for it in the evidence which they had heard. See *Wallace* v. *State,* 126 *Ga.* 749 (1) (55 S. E. 1042).

4. The State's witness Lum Griggs testified: that Harold Griggs spent Friday night with him at the New Blakely Hotel; that Harold Griggs

telephoned Henry A. Crawford from the hotel early Saturday morning, talking with him some three or four minutes; that during Saturday he and Harold Griggs went to Alabama, and while there Harold Griggs made a telephone call; that they returned to Blakely during the afternoon of the same day, and upon their return Harold Griggs again telephoned Crawford; that they then went to Crawford's home and he talked with Crawford's sister while Harold Griggs had a conversation with Crawford; that he and Harold Griggs then returned to the hotel; that shortly thereafter James Bush and two other men from Phenix City drove up in Bush's car; that Harold Griggs and Bush then had a conversation in his room at the hotel; that Harold Griggs then went to Crawford's home; that he, Bush, and the two men who came from Phenix City with Bush went to Crawford's home, parking Bush's car in Crawford's yard; that Bush entered Crawford's home alone; and that he heard a number of pistol shots immediately after Bush entered the house. This testimony was admitted over an objection that the State had not previously shown the existence of a conspiracy between Crawford and Griggs to kill Bush, and error is assigned on its admission in several special grounds of the motion for new trial. These grounds of the motion are not meritorious since the evidence objected to was clearly admissible for the purpose of establishing the existence of a conspiracy between Crawford and Griggs to commit the act for which they were jointly charged. The existence of a conspiracy may be shown by acts and conduct as well as by express agreement.

5. Over an objection that the State had not proved the existence of a conspiracy between this defendant and some other person to kill James Bush, Mrs. James Bush was permitted to testify that someone, during the absence of her husband, called him over the telephone on Saturday before he was killed that night. We fail to see how the admission of this evidence could have injured the defendant. The record does not show who called him, where the call came from, nor the purpose for which he was called. Even error without injury does not require the reversal of a judgment.

6. Since the evidence adduced on the trial was amply sufficient to show the existence of a conspiracy between this defendant and Harold Griggs to kill James Bush, there is no merit in special ground 4 (f) of the motion for new trial, which complains about the admission of an original telephone toll ticket concerning a phone call which some person whose surname was "Griggs" made to James Bush on November 13, 1953, from Columbia, Alabama.

7. The evidence was sufficient to support the verdict. Accordingly, the general grounds of the motion for new trial are without merit.

*Judgment affirmed. All the Justices concur, except Head, J., who dissents.*

ARGUED SEPTEMBER 14, 1954—DECIDED OCTOBER 13, 1954— REHEARING DENIED NOVEMBER 10, 1954.

*S. B. Lippitt,* for plaintiff in error.

*R. A. Patterson, Solicitor-General, Jesse G. Bowles, Eugene Cook, Attorney-General, Rubye G. Jackson,* contra.