26457.   EVANS v. THE STATE.

UNDERCOFLER, Justice. This appeal is from the conviction of Willie James Evans for the murder of his wife, Willie Louise Evans. He appeals to this court from the sentence of life imprisonment. *Held:*

The evidence shows that the defendant and the decedent had been married about nine months, that they lived in an apartment with his wife's three children and two grandchildren.

Mary Hudson testified that she was a neighbor of the decedent and on the morning of the homicide, Saturday, March 28, 1970, they went shopping. They saw the defendant's car stopped with the hood raised. The decedent went over to the car and talked with the defendant. She returned to the witness' car. As they were driving, the defendant passed them in his car at least three times traveling at a high rate of speed. She and the decedent returned to their apartment house, and the defendant drove up in his car. The decedent went over to the defendant's car and he seemed very angry. Later the witness went to the apartment of the defendant and the decedent to talk to the defendant but he would not talk with her. She left their apartment about 1:15 p.m. that afternoon. About 3:15 p.m. she saw the decedent again outside her apartment. About 4:50 p.m. the nine-year old son of the decedent came to her apartment and told her that his mother was dead. She went to the decedent's apartment, found her dead and the police were called. The decedent was lying on her back on the side of the bed, was undressed from the waist up, and had no shoes on. She found one of the decedent's teeth in the living room. The one-year-old and three-year-old grandchildren were in the room crying and yelling.

Kenneth Word, the nine-year-old son of the decedent testified that on the day of the homicide, he had been outside the apartment in the yard playing; that he came inside to get some water; that his mother was lying on the sofa watching television; that the defendant was sitting in a chair in the living room looking at his mother; that the two small children were in the house; that he left the house by the front door which was unlocked; that he later tried to enter the house by the front door, found it locked and had to enter by the back door; and that, when he went inside, he found his mother dead.

The next door neighbor of the decedent about 11 or 12 o'clock that morning heard some "bumping and moving around" and she heard "somebody arguing."

Cary Evans, the sister of the defendant, testified that he came to Phenix City on the day of the homicide. She asked to borrow his car to go shopping about 2 p.m. He lent her his car and she

brought him to within 1½ blocks of his home.

Rev. Bobby Lee Upshaw and his wife drove to the home of the decedent to deliver a case of soft drinks. About 4:30 p.m. he knocked on the door of their apartment. He waited about 5 minutes before the defendant came to the door and told him that the decedent had gone to town with the children. He saw one of the decedent's small grandchildren in the room screaming. The defendant said the child was screaming because her mother had gone downtown. As they drove away from the apartment, he saw the defendant leave the apartment and walk toward the decedent's car and the clothesline. Flora Upshaw testified that she was with her husband when he went to the decedent's apartment to deliver the drinks. She asked her husband what time it was and he said 4:30 p.m. Her husband went to the apartment door and knocked. He had to wait a long time before the door was opened. She saw her husband talk to the defendant. The defendant took the soft drinks and "threw" them on the table. After they drove away, the defendant walked to his car.

Dr. Richard Shuffstall, a pathologist, testified that he performed a post-mortem examination on the body of the decedent about 8 p.m. on the day of the homicide. His examination revealed that one upper front tooth was missing, that another upper tooth was very loose, that a constriction mark was along the front of the anterior surface of the neck with some skin loss, that it had the appearance of skin affected by a rope, that there were small hemorrhages in the whites of her eyes and on her scalp; and that both of her lungs were filled with fluid. These are classical findings that are noticed when death is the result of strangulation or suffocation. He testified that death had occurred within six hours of his examination.

Detective Norwood testified that he first saw the defendant on the night of the homicide about 6:45 p.m. About 8:30 or 9 that evening he began to suspect him of murder because of the evidence given by the witnesses they had questioned and because of the findings from the autopsy. The defendant was informed of his constitutional rights and stated that he did not need an attorney because he had not done anything, that he wanted to

find out "about all of this," and that he had been in Phenix City since noon of that day. The detective observed numerous fresh scratch marks on the back of the defendant's left hand and one scratch was deep and oozing blood. He had a photograph made of the left hand at that time.

Frankie Lee Word Bradley, the decedent's daughter, testified that she lived in the apartment with her mother, the defendant, her sister, her brother, and her sister's two children. About a month prior to the homicide, the decedent and the defendant were arguing in another room. She heard some fighting and went into the room. She saw the defendant hit the decedent. She asked him to stop hitting her mother. He told her he would hit her again. He then struck the witness and she scratched him. He left the apartment and later came back with a shotgun and pointed it at her mother. He and the decedent struggled over the gun. Her sister attempted to call the police and the defendant snatched the telephone from the wall. They went to another apartment to call the police and the defendant left. They went to her sister's apartment then because the decedent was afraid to stay at their home. While they were at her sister's apartment, someone shot through the window and hit her brother-in-law but she did not see who fired the shot. A few minutes later, she saw the defendant walking back and forth with a gun in front of her sister's apartment. He told the decedent he was going to kill her if it was the last thing he did.

Cora Battle testified that the decedent was her mother and that she was living with her mother, the defendant, her sister, her brother and her two children at the time of the homicide. About 10 or 11 o'clock a.m. on the day of the homicide, her stepfather was angry with her mother because she had not cooked him anything to eat. The witness left the apartment about 3 p.m. and her mother was lying in the living room watching television and the defendant was lying on the bed in the bedroom. She returned home that day about 5:30 p.m. and saw the defendant, his sister, and his niece leaving the apartment area. She gave substantially the same testimony about the altercation between her mother and the defendant that her sister had given. She further testified about the subsequent

shooting and threat of the defendant that he would kill the decedent if it was the last thing he ever did.

George Wiley testified that he saw the defendant at his Eighth Street bar between 3 and 4 p.m. and as late as 4:15 p.m. when he left to go home. On cross examination he was read a statement signed by him on May 11, 1970, to the effect that the defendant was in the bar at 4:30 p.m. and that the witness left at 5:15 p.m. Eula Mintz testified that the defendant was in the bar a little after 4 p.m. Willie O. Brown testified that he saw the defendant at the bar sometime after 2 or 3 p.m. Arthur Jordan testified that the defendant was in the bar at 4 p.m. or 4:15 p.m., that he took the defendant to Phenix City and back to the bar, and then took him to his apartment.

The defendant testified that he had injured his hand on the morning of the homicide when he tried to repair the radiator hose on his car. His hand slipped and the engine of the car burned it. His stepdaughter, Cora, had planned to leave the apartment that day about 3:30 p.m. Two or three minutes after she left, Upshaw came to the back door and the child was crying because its mother had just gone to town. He told Upshaw that his wife was in the house. He then walked to the clothesline, got a shirt and brought it into the house for his wife to iron. He did not tell Upshaw that his wife and stepchildren were downtown. He testified that he was drinking that afternoon at a bar and got someone to take him to Phenix City to get his car from his niece. He did not tell the detective that he had been in Phenix City since noon.

1. The evidence is sufficient to support the verdict and the general grounds enumerated as error are without merit.

2. The appellant contends that the charge on alibi which was given to the jury was reversible error because it placed an unconstitutional burden of proof on him in violation of the Fourteenth Amendment to the Constitution of the United States. There is no merit to this contention of the appellant and this enumeration of error is controlled by the rulings of this court in *Young v. State,* 225 Ga. 255, 256 (167 SE2d 586); *Chaffin v. State,* 225 Ga. 602 (170 SE2d 426); *Thornton v. State,* 226 Ga. 837 (178 SE2d 193).

3. The appellant complains because two State witnesses were allowed to testify, over his objections, when their names had not been furnished him as required by law.

*Code Ann.* § 27-1403 provides: "Every person charged with an offense against the laws shall be furnished, on demand, previously to his arraignment, with a copy of the accusation, and a list of the witnesses on whose testimony the charge against him is founded. Without the consent of the defendant, no witness shall be permitted to testify for the State whose name does not appear upon the list of witnesses as furnished to the defendant unless the solicitor or prosecuting attorney shall state in his place that the evidence sought to be presented is newly-discovered evidence which the State was not aware of at the time of its furnishing the defendant with a list of the witnesses." Ga. L. 1966, pp. 430, 431.

The appellant contends that Frankie Lee Word Bradley and Cora Battle's names were not on the list of witnesses furnished him by the district attorney after his demand. The district attorney stated in his place that he did not know of the existence of these witnesses until October 27, 1970. The case came on for trial on November 19, 1970. The district attorney stated that when he first discovered these witnesses, he forwarded to appellant's counsel, on November 2, 1970, over two weeks before the trial, an additional list of witnesses on which their names were listed. The appellant contends that the police officers knew about these two witnesses shortly after the crime because of their investigation of the case and that their knowledge was imputable to the district attorney. We do not agree with this contention. The district attorney stated in his place that the evidence sought to be presented was newly discovered and that he did not know of it until October 27, 1970. Furthermore, the district attorney forwarded these names to counsel for the appellant more than two weeks before the trial.

4. Frankie Lee Word Bradley and Cora Battle testified that the defendant and his wife had a "fight" about a month before the homicide, that the defendant hit his wife and one of the witnesses, pointed a shotgun at his wife, pulled the telephone from the wall when they tried to call the police, and said he would

kill the decedent if it was the last thing he ever did. Later someone shot into their sister's home where they had taken refuge. Shortly after this shooting, the defendant was seen with the gun walking back and forth in front of the sister's home.

This court has many times held that, "There was no error in admitting evidence of a previous difficulty between accused and deceased. It went to illustrate the state of feeling between them, and to show that, on an occasion different in time from the killing, the accused had drawn his gun on deceased. . . What weight should be given the evidence was for the jury." *Starke v. State*, 81 Ga. 593 (2) (7 SE 807).

"On a trial for murder, the recent previous difficulty between the defendant and the deceased is relevant as shedding light on the occurrence resulting in the homicide, and as illustrating the motive of the defendant." *Scott v. State*, 214 Ga. 154 (103 SE2d 545); *Williams v. State*, 208 Ga. 704 (1) (69 SE2d 199); *Coleman v. State*, 141 Ga. 737, 739 (82 SE 227).

The contention of the appellant that the testimony of these witnesses was error is without merit.

5. "A person convicted of murder shall be punished by death or by imprisonment for life." Ga. L. 1968, pp. 1249, 1276 (*Code Ann.* § 26-1101). After the jury found the appellant guilty, the court conducted a pre-sentence hearing before the jury as provided by Georgia Laws 1970, pp. 949, 950 (*Code Ann.* § 27-2534). The jury in this case found the appellant guilty and sentenced him to life imprisonment. He enumerates as error the introduction of a certain prior conviction during his pre-sentence hearing. Since the jury sentenced him to life imprisonment and not death, error, if any, in admitting this evidence would be harmless. *Crawford v. State*, 211 Ga. 166 (5) (84 SE2d 354). This contention of the appellant is without merit.

6. The appellant contends that the trial judge committed prejudicial and reversible error in allowing into evidence, over timely objection, a photograph of the defendant's hand because it was the product of an illegal arrest.

The evidence shows that the victim's body was found at 4:50 p.m. when her young son, who had been playing in the yard, came back into the apartment; that Officer James Miles was one of

the first officers dispatched to the scene of the homicide at 4:58 p.m.; that he found the victim dead, lying on the bed, undressed from the waist up, and bleeding from the nose and mouth; that he found no indication that an intruder had been on the scene or that there had been a struggle. A large crowd of people soon gathered at the scene. At approximately 6:30 p.m. while the homicide was still under investigation, the defendant, who was absent when the body was found, walked up to the officer and asked him what was happening. The officer had been previously informed by Upshaw or one of the daughters that the defendant had been there shortly before the homicide was discovered. The victim's daughters and sisters thought the defendant had killed her and when they saw him threatened him, and he was placed in a police car for his protection. He was taken to the police station. Under these facts, the officer had probable cause to arrest the defendant, and we hold that the defendant was under legal arrest at the time the photograph was taken.

This enumeration of error is without merit.

*Judgment affirmed. All the Justices concur.*
ARGUED APRIL 12, 1971—DECIDED MAY 6, 1971.

*Frank K. Martin,* for appellant.

*E. Mullins Whisnant, District Attorney, Eugene Hardwick Polleys, Jr., Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Courtney Wilder Stanton, Dorothy T. Beasley, Assistant Attorneys General,* for appellee.