## 38318. TUCKER v. THE STATE.

HILL, Presiding Justice.

Juanita "Gail" Harden Tucker was convicted of the murder of John Henry "Horace" Butts and received a life sentence.

The state showed that the defendant and the victim were sitting in his car outside a local grocery and nightclub between eight and nine o'clock on December 7, 1980, when the victim's wife arrived and she told the defendant to get out of the car and leave her husband alone. The defendant went into the club and, after a brief argument, the victim and his wife followed her into the club. The wife knocked the defendant off a barstool, the women began to fight, the victim left, two men separated the women, and the wife left. At home, the victim and his wife continued to argue.

About a half hour later, the victim returned to the club where he told the defendant that he wanted to talk things over with her and that he would drive her home. Instead, he turned into a nearby dirt road.

There, the defendant claims he asked her if she had been able to obtain the prescriptions she needed for which he had previously given her $20.00. (The defendant testified that she had had open heart surgery in April and was required to take heart pills, nerve pills and blood pressure pills.) She replied that she had spent the money on other things and needed more money to get her medication. The victim opened the defendant's purse and found several bottles of pills. Enraged, he began stuffing pills in her mouth and forced her to chew and swallow about 15 or 20 pills by holding her neck with his right arm, then threatening her with something sharp until she obliged by swallowing the pills. The defendant said that she tried to escape by opening the door, that somehow she got a knife from him and cut him and ran down the road until she fell weak and dizzy into a ditch.

The victim then drove away in the car, but the defendant heard it crash shortly thereafter. Hearing nothing further, and after going to the bathroom, she proceeded, sick and dizzy, to the car, where she unsuccessfully attempted to rouse the victim. She then crawled into the back seat where she awoke about 8 a.m. the next day, walked to an

intersection and flagged down Richard Edwards, who was the victim's employer. She told Edwards that there had been a wreck and that the victim was dead. After observing the car and body, they went to the home of a relative of the victim to call the police and an ambulance. On the way back to the scene, the defendant told Edwards, "I think I cut Horace last night." She was taken into custody by police at the scene. After being advised of her Miranda rights, she made a statement similar to her testimony at trial.

The autopsy revealed that the victim, who was about 33 years old, 6'3" and 200 pounds, died as a result of the penetration by a sharp instrument over 6 inches long into his left chest through his lung, collapsing it, and into a ventricle of his heart, which caused massive bleeding into the chest. No other wound, bruises or scratches were found on the body. The trial court refused to allow testimony that the victim suffered from cirrhosis of the liver and had a blood alcohol content of .44. (.10 raises a presumption of intoxication, Code Ann. § 68A-902.1 (b).)

No witnesses testified to any signs of a struggle either in the car or in the appearance of the defendant. She testified, however, that she was taken to a doctor by the sheriff's department the next day and was suffering from 2 black eyes, sore arms and a scar on her head. No witnesses were called who corroborated her statement.

A butcher knife, the defendant's pocketbook and wallet, and several personal items and identification were found on the passenger side floorboard along with some prescription and non-prescription medicine bottles. Several more such vials and loose pills were also found in her bag. Some of the bottles were empty. The victim's wife testified that the knife found in the car did not belong to her husband.

The defendant admitted that she had seen the victim about three times and had had sex with him once, but denied they were having an affair and further denied that she killed him because he wanted to terminate their relationship.

1. In her first, second and seventh enumerations of error, defendant challenges the sufficiency of the evidence, contending that there is no evidence of malice or intent. She urges, on the other hand, that the evidence shows self-defense as a matter of law.

Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), involved the sufficiency of the evidence as to intent to kill; i.e., premeditation. There the victim was found partially disrobed in a secluded church parking lot. The cause of her death was two bullet wounds. The defendant admitted the shooting but claimed it was accidental in that the victim attacked him with a knife when he

resisted her sexual advances and the gun went off during the struggle. There the Court said (443 U. S. at 319): ". . . the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court went on to point out that, after conviction, upon judicial review "*all of the evidence* is to be considered in the light most favorable to the prosecution." (443 U. S. at 319). Discounting the defendant's claim of self-defense as being incredible (443 U. S. at 325), the Court found the evidence against Jackson to satisfy the standard quoted above.

In the case before us, aside from the defendant's testimony, there was no evidence of a struggle. The jury would have been authorized to find that the defendant stabbed the victim (which the defendant admitted) and to disregard the defendant's claim of self-defense. Thus we have a case in which a married man and a woman were together in a car on a lonely road at night when the woman stabbed and killed the man. A jury is authorized to find that a person of sound mind and discretion who intentionally and without justification used a deadly weapon or instrument in such manner as to cause death, had the intent to kill. See *Davis v. State,* 249 Ga. 309 (290 SE2d 273) (1982). The evidence was sufficient for a rational trier of fact to find the defendant guilty of murder. Jackson v. Virginia, supra.

The jury would have been authorized to find that the defendant asked the victim for more money, that he refused, that she stabbed him and got out of the car, that he drove off and wrecked the car, and that she consumed some pills to create a defense. See Code § 26-704. Or the jury would have been authorized to find that the victim wanted to end their relationship and that the defendant got mad and stabbed the victim. Code § 38-109 does not require a new trial. *Harris v. State,* 236 Ga. 242 (1) (223 SE2d 643) (1976). Enumerations of error 1, 2 and 7 present no grounds for reversal.

2. Citing Code Ann. § 27-210, the defendant argues that the trial court committed reversible error in failing to grant her motion to quash the indictment for not granting her a committal hearing within 72 hours of her arrest. The defendant was arrested on December 8, 1980, was indicted on January 12, 1981, and moved to quash the indictment on March 12, 1981. We find no error. *Natson v. State,* 242 Ga. 618 (3) (250 SE2d 420) (1978), cert. denied, 441 U. S. 925 (1979). *Manor v. State,* 221 Ga. 866, 869 (148 SE2d 305) (1966), relied upon by the defendant, is inapposite as it deals with waiver of this statutory right under duress. See *Jackson v. State,* 225 Ga. 39, 43 (165 SE2d 711) (1969). See also *State v. Middlebrooks,* 236 Ga. 52, 54 (222 SE2d 343) (1976).

3. The defendant next complains of the denial of her motion for the appointment of expert witnesses. In her motion, she alleged only an unspecified need to hire an investigator to assist her appointed counsel in the preparation of her defense, a hypnotist "to conduct hypnosis upon the defendant, as defendant maintains her innocence of the charge against her," and a polygraph examiner to conduct a test on her because her offer to take such a test had not been accepted by the state. She further alleges that the denial of her motion deprived her of the effective assistance of counsel and of her due process and equal protection rights.

This case turned on whether the jury believed the defendant's claim of self-defense. It is apparent that the defendant hoped to corroborate her testimony through the use of a lie detector test and by hypnosis. However, the results of a polygraph test would not be admissible absent the consent of the state, which she admits refused to give her such a test. *Cervi v. State,* 248 Ga. 325, 331 (282 SE2d 629) (1981). And we have held that because their reliability has not been established, statements made while a witness is under hypnosis are inadmissible. *Alderman v. State,* 241 Ga. 496 (7) (246 SE2d 642) (1978); *Emmett v. State,* 232 Ga. 110, 115 (205 SE2d 231) (1974). Thus, we find no error in denying these requests.[1] The defendant has shown no reason for the trial court to supply an investigator for the defense and hence we find no error in the denial of this request. *Ennis v. State,* 249 Ga. 222 (2) (290 SE2d 50) (1982).

*Patterson v. State,* 238 Ga. 204 (232 SE2d 233) (1977), urged by the defendant, is distinguishable as there the conviction on possession of a controlled substance rested solely on the state's expert witness' identification of the substance. Here the state did not rely upon the testimony of a hypnotist or polygraph operator in presenting its case. We find no error. Compare *Sabel v. State,* 248 Ga. 10 (6) (282 SE2d 61) (1981).

4. The defendant enumerates as error the trial court's refusal to ask prospective jurors questions submitted on behalf of defendant regarding racial and sexual bias and prejudice. The defendant is a black female; the victim was a black male.

Under our law in felony cases the trial judge asks specified statutory questions on voir dire. Code §§ 59-806, 59-705. Then the

---

[1] We also find no error in the trial court's instructing the jury to disregard the defendant's testimony that she volunteered to take a lie detector test. The defendant may not attempt to bolster her credibility by asserting to the jury that she is willing to submit to a polygraph examination when the results of that test are not admissible.

lawyers for the state and the defendant have the right to "an individual examination of each juror" regarding any matter or thing which would illustrate any "leaning or bias" which the juror might have respecting the case or counsel or parties thereto. Code Ann. § 59-705.

In the case before us, the defendant moved that the trial court conduct general voir dire, urging that police officers are disqualified (see *Hutcheson v. State,* 246 Ga. 13 (1) (268 SE2d 643) (1980)), and pointing out that if the defendant were required to identify the police officers and strike them for cause, it would appear to the remaining jurors that she did not want any police officers on her jury.

The trial judge said that he would conduct the voir dire if he did it all, but that he would not do part and let the lawyers do part of it (i.e., he would grant the motion if the lawyers waived their rights to individual voir dire). The lawyers agreed that the court would conduct the voir dire and submitted their questions to the court.

The defendant submitted 12 questions, the first 2 of which were: "(1) Do any of you have any racial prejudice against the accused, Mrs. Juanita Tucker, simply because she is a black American? (2) Do any of you have any sexual bias or sexual prejudice against the accused, Mrs. Juanita Tucker, simply because she is a female?" The court said: "I will not ask No. 1 and No. 2. I'm not going to inject either race or sex into this. I don't think it's proper."

Immediately after this ruling and again after the court and counsel agreed upon the other questions to be asked on voir dire, the court reiterated that if the court granted defense counsel's motion that the court conduct the voir dire, the court would do it all. In both instances, defense counsel agreed.

In Ham v. South Carolina, 409 U. S. 524 (93 SC 848, 35 LE2d 46) (1973),[2] the U. S. Supreme Court held that the trial court's refusal to ask questions concerning racial bias requested by the defendant Ham, a black civil rights activist charged with possession of marijuana (whose defense was he was being framed on the drug charge because of his activism), denied him a fair trial in violation of the fourteenth amendment.[3]

In Ristaino v. Ross, 424 U. S. 589 (96 SC 1017, 47 LE2d 258)

---

[2] In South Carolina the judge conducts the voir dire examination of potential jurors (409 U. S. at 527).

[3] The Court found no fourteenth amendment violation in the trial court's refusal to ask a requested question about possible prejudice because of the defendant's beard (409 U. S. at 528).

(1976), the Court held that the fourteenth amendment does not require the trial court to ask voir dire questions concerning possible racial bias in every case in which a request to ask such questions is made. Ross, who was black, was tried with two black co-defendants for armed robbery, assault and battery with a deadly weapon, and assault and battery with intent to murder. The victim was a white, uniformed private security guard. The court held that the trial court's refusal to ask requested questions concerning racial bias did not constitute a violation of the fourteenth amendment under the facts in Ross' case.

Like Ross, the defendant has shown no racial factors such as, or comparable to, those in the Ham case. No complaint is made that the trial court failed to ask the statutory questions concerning bias, prejudice and impartiality generally. Code § 59-806.

Moreover, under the Code section which allows counsel to examine each prospective juror individually as to any leaning or bias which the juror might have respecting the parties to the case, Code § 59-705, supra, defense counsel could have asked the proposed questions regarding racial and sexual prejudice and bias. Instead, he waived the right to do so (apparently for tactical reasons). We find no error here. See *Patterson v. State,* 233 Ga. 724, 731 (213 SE2d 612) (1975).

5. Defendant's next enumeration of error involves the refusal of the trial court to allow testimony about the condition of the deceased's liver, as observed by the doctor conducting the autopsy, and about his blood alcohol level, as determined by the state crime lab. The fact that the victim had cirrhosis of the liver was only remotely relevant to whether the defendant was drunk on the night in question and we find no abuse of discretion. *Davis v. State,* 230 Ga. 902 (3) (199 SE2d 779) (1973).

The defendant also sought to introduce the results of the crime lab report of the blood alcohol test which showed that, at the time of his death, the victim had a .44 percent blood alcohol level. (0.10 percent raises a presumption of intoxication, Code Ann. § 68A-902.1 (b).) The defendant argues that the victim's intoxication explains his conduct in stuffing the pills in her mouth as well as why she was afraid of him. The defense attempted to introduce evidence of the victim's blood alcohol level by cross-examination of the GBI agent who investigated the crime scene and of the doctor who performed the autopsy and acquired the blood sample that was sent to the crime lab. The serologist from the crime lab was not called to testify. Thus, the proper foundation for admission of the results of the lab test was not laid and the evidence was properly excluded.

The defendant nonetheless argues that the hearsay evidence

was admissible under Code Ann. § 38-302 to explain her conduct as well as that of the deceased. Code Ann. § 38-302 provides: "When, in a legal investigation information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence." The defendant relies on *Garrett v. State,* 157 Ga. 817, 820 (122 SE 211) (1924), where this court reversed the defendant's conviction because the trial court excluded the testimony of her nephew about the conversation he overheard between his grandmother and the defendant shortly before the shooting in which the defendant told her mother that there was a man (the victim) on her porch trying to enter the house who claimed to be the defendant's husband. The court held that the testimony should have been admitted as relevant to the shooting of the intruder and because it explained the conduct of the defendant. *Garrett v. State,* supra, is not applicable here.

The report of an expert expressing the expert's opinion as to the result of a scientific experiment is not admissible under Code Ann. § 38-302 to explain conduct or motive where the foundation for admission of that opinion is not properly laid. We find no error here.

6. The defendant complains that the trial court allowed the state to cross-examine her about the adulterous relationship between herself and the victim. She objected to these questions on the grounds that they improperly put her character in issue and improperly injected evidence of prior criminal activity into the case. The state sought to show that her motive in killing the victim was rage at his attempt to end their relationship.

Evidence of another crime which tends to show motive or intent is admissible. *State v. Luke,* 232 Ga. 815 (209 SE2d 165) (1974); *Crawford v. State,* 211 Ga. 166 (2) (84 SE2d 354) (1954); Agnor's Georgia Evidence, § 10-7 (1976). Such evidence is relevant and "is not subject to an objection because it may tend incidentally to discredit the character of the defendant which had not otherwise been placed in issue." Agnor's Georgia Evidence § 10-5, p. 169 (1976); *Causey v. State,* 154 Ga. App. 76 (3) (267 SE2d 475) (1980). The trial court committed no error in allowing the state to cross-examine the defendant about her prior sexual relationship with the victim.

7. The defendant next raises a Sandstrom (v. Montana, 442 U. S. 510 (1979)) issue on the following charge: "I charge you that you may infer that a person of sound mind and discretion intends to accomplish the natural and probable consequences of his intentional act, and if a person of sound mind and discretion intentionally and without justification uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily used

and thereby causes the death of a human being, you may infer the intent to kill."[4] The defendant claims error because the jury was not informed that such an inference is rebuttable, citing *Lane v. State,* 153 Ga. App. 101 (264 SE2d 569) (1980). *Lane* is distinguishable. There the trial court's charge, in pertinent part, was that "[a] person of sound mind and discretion *is presumed* to intend the natural and probable consequences of his acts. . . ." (Emphasis supplied.) That is not the case here, where the entire charge was twice presented in terms only of the inferences which might be drawn by the jury. *Williamson v. State,* 248 Ga. 47 (2) (281 SE2d 512) (1981). Since the jury could not have understood this charge as creating a mandatory presumption, it was not error to fail to state that presumptions may be rebutted. Reading the charge as a whole, the jury could not have interpreted the challenged instruction as shifting the burden of persuasion on the issue of intent to the defendant. We find no Sandstrom error here.

8. In her final enumeration of error, the defendant contends that the "if you believe" language in the following charge is also burden shifting: "Now, ladies and gentlemen of the Jury, the defendant contends that she is not guilty in this case. She says that under the evidence and all the facts and circumstances in the case she is entitled to an acquittal at your hands. She says that what she did she did in self-defense to save her life or to repel a felonious assault being made upon her at the time by the deceased. I charge you that if you believe her contentions and that she was justified under the principles of law as I have given you in charge, if you believe the defendant's contentions to be the truth of this case *or if there is a reasonable doubt upon your mind* then you should acquit the defendant." (Emphasis supplied.) We find no error. In light of the charge as a whole, the jury could not have interpreted this charge as shifting the burden to the defendant.

*Judgment affirmed. All the Justices concur, except Gregory, J., who concurs specially as to Divisions 2 and 5.*

DECIDED APRIL 13, 1982.

*Gilmore, Waddell & Phillips, Thomas J. Phillips, Jr.,* for appellant.

---

[4] The trial court in essence repeated this charge later as follows: "I charge you that you may infer (a) that the acts of a person of sound mind and discretion are the product of his will and (b) you may infer that a person of sound mind and discretion intends the natural and probable consequences of his act. Now, whether or not you may find any such inference, is a matter within the discretion of the jury."

*Joseph H. Briley, District Attorney, Craig M. Childs, Assistant District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.

GREGORY, Justice, concurring specially.

I concur specially as to Divisions 2 and 5.

(2) Defendant's complaint was that she was not granted a committal hearing within 72 hours of her arrest under a warrant. The majority opinion, which cites only cases involving a failure to hold a committal hearing, may imply that Georgia law requires a committal hearing within 72 hours of an arrest under a warrant. This is not the law of Georgia and I think we should say so.

Code Ann. § 27-210 states: "Every officer arresting under a warrant shall exercise reasonable diligence in bringing the person arrested before the person authorized to examine, commit or receive bail and in any event to present the person arrested before a committing officer within 72 hours after arrest. The arresting officer shall notify the accused as to when and where the commitment hearing is to be held. The offender who is not notified of the time and place of the commitment hearing, before the hearing, shall be released."

The accused has the right to be represented by counsel at his committal hearing. *State v. Houston,* 234 Ga. 721 (218 SE2d 13) (1975). A common practice in this State is that when the accused is brought before the committing officer as required by Code Ann. § 27-210, counsel is appointed at that time if the accused is indigent. A "reasonable time shall be given to the *defendant* or *prosecutor* for the preparation of his case." Code Ann. § 27-403 (pertaining to courts of inquiry and proceedings therein). (Emphasis supplied.) To require a committal hearing within 72 hours of an arrest would often be unfair to both the defendant and the prosecutor. Therefore, the hearing may be "postponed to a future day at the instance of either party, or by the *court. . .* [and the accused] shall have the right to give bail for appearance at the hearing before said court of inquiry, [if] the offense is bailable under the authority of said court." Id. (Emphasis supplied.)

"The Act of 1956 [Code Ann. § 27-210] requires the officer making an arrest under a warrant to present the person arrested before a committing officer within 72 hours after arrest, and to notify the accused as to when and where the committal hearing is to be held. This Act *does not* provide that the committing magistrate shall have a hearing within 72 hours after the arrest." *Dodson v. Grimes,* 220 Ga. 269 (1) (138 SE2d 311) (1964). (Emphasis supplied.) Accord, *Tarpkin v. State,* 236 Ga. 67 (1) (222 SE2d 364) (1976); *Beavers v. State,* 132

Ga. App. 94 (5) (207 SE2d 550) (1974); *Whitfield v. State,* 115 Ga. App. 231 (1) (154 SE2d 294) (1967).

(5) The defendant sought to introduce results of a crime lab report regarding a blood alcohol test of the victim's blood. Of course, this test and the report were made at a time subsequent to the conduct under investigation.

In face of an objection that the report violated the rule against hearsay, the defendant asserts that the report is admissible, not to prove the truth of the matter asserted therein, but to explain her conduct and the conduct of the deceased. Code Ann. § 38-302.

The limited theory of admissibility of hearsay under Code Ann. § 38-302 is there are circumstances in which statements made (or reports given) to one who is later a witness, result in that witness taking certain action or engaging in certain conduct. A classic example is where a police officer receives a telephone call asking for help at a given residence. The fact of the receipt of the call explains the officer's conduct in going to the residence in question. The truth of what may have been said in the phone conversation is not important with regard to the limited function of explaining why the officer went to the residence.

In the case at hand there is simply no action or conduct of either the victim or defendant which resulted from the report. The report cannot explain conduct resulting from the report having been made. Rather, the report, if its contents be true, may go to explain conduct preceding the existence of the report. If the victim had a .44 percent blood alcohol level at the time of his death, surely his conduct and the reactions to that conduct by the defendant are affected by this circumstance and to some degree explained thereby. But, that all turns on the truth of the hearsay statement and not upon a response to the hearsay statement.

I concur fully in the remaining divisions of the majority opinion.